SCHULTZ, RESPONDENT, *v.* O'ROURKE, APPELLANT.

[Submitted June 12, 1896.    Decided July 13, 1896.]

CONTRACTS—*Merger—Tender.*—Where defendant contracted to convey to plaintiff a one-fourth interest in a brick yard and works, with a provision that the plaintiff, at the expiration of one year might, if dissatisfied with the business, demand a return of the purchase price with one-fourth of the net profits and re-convey such interest, and shortly after the making of the contract the property is transferred, with the consent of both parties, to an incorporated company, the plaintiff receiving one-fourth of the capital stock, such transfer merged the original property into the company, and if a tender was necessary to plaintiff's right to rescind, a tender of the amount of stock received was all that defendant could require to put him in *statu quo.*

SAME—*Premature tender.*—A tender of stock representing an interest in property purchased under a contract reserving to the purchaser the right to rescind at the expiration of one year, is premature if made before the expiration of the year.

SAME—*Rescission—Mutual covenants—Necessity of tender.*—Where the vendee in a contract for the sale of an interest in a manufacturing plant, reserved the right if dissatisfied with the business at the expiration of one year, to demand repayment of the purchase price and re-convey the interest acquired, and at the expiration of the year expressed such dissatisfaction, it then devolved upon the vendor to return the purchase price and upon the vendee in turn to re-convey the interest, and no formal tender of the stock representing the vendee's interest was necessary prior to the trial of an action to recover the purchase price.

SAME—*Same—Declarations waiving formal tender.*—Declarations in such case by the

vendor, upon a demand being made after the expiration of the year, for the repayment of the purchase money, that he would settle when the vendee paid a part of a certain note, and at another time when approached for a settlement, that he would have nothing to do with it, constituted a waiver of the production of the stock and its formal tender.

SAME—*Same—Tender of identical shares of stock received.*—Transfer by the plaintiff of a portion of the stock prior to the expiration of the year would not defeat a recovery of the purchase price, where a tender was made upon the trial of a certificate representing the full amount of the stock originally received. A return of the identical shares received was not essential.

SAME—*Grounds for refusing tender—Waiver of other grounds.*—The defendant having refused a tender of the stock on the trial solely upon the ground that it had been attached, will be held on appeal to have waived the objection that the stock tendered did not stand in plaintiff's name.

*Appeal from Second Judicial District, Silver Bow County.*

ACTION on contract. Judgment was rendered for the plaintiff below by SPEER, J. Affirmed.

Statement of the case by the justice delivering the opinion.

The plaintiff brought this action to recover $2,500, alleged to be due by the defendant under the terms of a contract entered into between plaintiff and defendant, and to recover one-fourth of the profits under the contract referred to. The agreement between the parties was dated March 29, 1892, and after the more formal recitals continued as follows :

"Witnesseth, that the said party of the first part agrees to purchase from the said second party an undivided one-fourth interest of, in, and to the Western Star Brick Yard and Brick Works, and pay to the said second party therefor the sum of two thousand five hundred ($2,500) dollars, money of the United States of America.

And the said second party, for and in consideration of the covenants and agreements hereinbefore contained on the part of the said first party, agrees to transfer and convey to the said first party a good and sufficient title to an undivided one-fourth interest of, in, and to the said brick yard and brick works, and all the stock and fixtures of the said works, upon the payment to, and receipt by him, of the above mentioned sum.

And the second party hereby further agrees that the said

first party may retain the said one-fourth interest in the said concern for a period of . one (1) year, and if at the end of said term of one year the said first party is dissatisfied with the said investment or business, then, and in that event, the said second party agrees to refund to her the said sum of two thousand five hundred ($2,50u) dollars, the purchase price of the said interest, and the said first party agrees to reconvey the said interest to the said second party, and relinquish all her rights thereto or therein.

And it is hereby further agreed by and between the parties hereto that in the event of the said first party being dissatisfied with the said business, and in the event of the purchase price being refunded to her at the expiration of the term of one year, then, and in that event, she will be entitled to one-fourth the net profits of the said business during the time she is interested in the business, and the said second party hereby agrees to pay to the said first party, in addition to the purchase price of said business above mentioned, a sum equal to one-fourth of the profits of said business during said time.''

The complaint alleges that about April 1, 1892, the Western Star Brick Yard and Brick Works merged into the Northwestern Brick and Supply company, and thereafter the business was carried on under the latter name; that said business yielded a profit for the year ended March 29, 1893, of about $10,000; that on or about January 29, 1893, plaintiff notified defendant that she was dissatisfied with the business, and demanded that on the expiration of the year the sum of $2,500 should be refunded to her, together with the sum equivalent to one-fourth of the profits of the business; that on March 29, 1893, defendant was absent from Montana, but that about April 10, 1893, after his return, plaintiff demanded of the defendant the said sum of $2,500 and the sum of $2,500 as one-fourth of the profits of said brick business, but defendant refused to pay said sums; that plaintiff has been, and was at the time of the commencement of this suit, ready to fulfill her part of the agreement, and to reconvey the interest transferred. to plaintiff by defendant, but defendant has refused to accept the same.

The answer denies the allegations of the complaint and sets up a counterclaim, alleging that plaintiff between January 1, 1892, and the 1st of May, 1893, became indebted to defendant upon an account for rents and money loaned to plaintiff and paid out and expended for her use at her special instance and request. The replication denied the counterclaim.

The cause was referred to a referee, who made the following material findings :

"(1) On March 29, 1892, defendant sold plaintiff one-fourth interest in the Western Star Brick Yard and Works for the sum of $2,500, as evidenced by a written agreement heretofore set forth.

"(2) That on April 1, 1892, the property of the Western Star Brick Yard was transferred to the Northwestern Brick and Supply company, having a capital stock of $10,000, of the par value of one dollar per share.

"(3) That said transfer was made with the knowledge and consent of plaintiff and defendant, and with intent that the contract should remain in force as to the new company, and that plaintiff accepted 2,500 shares of the new company in lieu of her interest in the old one, and that it appears that on March 20, 1893, 2,475 shares of the new company were issued to the plaintiff and 25 shares to her husband, C. Schultz.

"(4) That at the end of the year, and prior thereto, the plaintiff expressed her dissatisfaction with the investment, and demanded the return of the purchase money, and her share of profits; but that no notice of the dissatisfaction or tender of stock was made on March 29, 1893.

"(5) That in the beginning of April, 1893, plaintiff demanded the return of the purchase money and share of profits, and offered to return the stock, but the offer was refused.

"(6) That the reason and grounds given by defendant for refusing were that there had been no profits during the year, and that the Northwestern Brick and Supply company had notes towards the payment of which plaintiff or her husband should contribute before defendant refunded to her the said purchase money.

"(7) That, although it appears that 25 shares of the stock during all of the year 1892, after June 6th, stood in the name of plaintiff's husband, there is nothing to show that either party considered that plaintiff's contract with defendant impaired by reason of that fact. That defendant considered the said contract still valid, is evidenced by the fact that in December, 1892, he offered to refund to plaintiff the said purchase money upon a return of the stock.

"(8) That there were no profits in the business; that the counterclaim set up by defendant was established in the sum of $106.91 for rentals and money loaned.''

The referee made conclusions of law to the following effect :

"(1) That under the contract, in the event of plaintiff's election to demand reimbursement, she was not liable for any of the debts or losses of the Northwestern Brick and Supply company.

"(2) That plaintiff could not demand a return of the purchase money, or an accounting for profits, before the expiration of the year, and that demands prior to the end of the year were only notices of plaintiff's election to be made at the end of the year.

"(3) That the demands made by plaintiff for the return of the purchase money and share of the profits in April and May, 1893, were made within a reasonable time after the expiration of the year.

"(4) That under the contract it was not necessary that an offer to return the stock should accompany the act of declaration by which plaintiff gave notice to defendant of her dissatisfaction with the investment, and of her election to be reimbursed, but that it was necessary that plaintiff should have the ability, as well as the willingness, to reconvey the full amount of the stock to the defendant.

"(5) That defendant's liability became fixed by the notices given before and after the expiration of the year.

"(6) That the amount due to plaintiff under the contract of March 29, 1893, was the amount of the purchase money, viz: $2,500, less $106.91, due by plaintiff to defendant, upon the

payment of which sum defendant was entitled to the reconvey-
ance to him of 2,500 shares of the stock of the Northwestern
Brick and Supply company.

"(7) That during the trial, plaintiff tendered to defendant
a certificate of 2,500 shares of stock of the Northwestern
Brick and Supply company, indorsed in blank, and demanded
the sum of $2,500, which tender and demand were by defend-
ant refused, whereupon the said certificate was placed in the
hands of the referee, and is now deposited with the clerk of
the court."

The referee recommended . that plaintiff have judgment
against defendant for the sum of $2,393.09, with interest and
costs, and that upon payment of the judgment, defendant was
entitled to the reconveyance of 2,500 shares of stock. Judg-
ment was entered in accordance with the referee's report.
The defendant moved for a new trial, assigning as grounds
therefor that the evidence was insufficient to justify the find-
ings of the referee, and that the referee erred in his several
conclusions of law. This motion was overruled, and appeal
taken to this court from the order overruling the motion for a
new trial and from the judgment.

*C. P. Drennan* and *Forbis & Forbis*, for Appellant.

I. The uniform rule in all cases of rescission, whether
founded upon express contract, or for fraud, or breach of
warranty is, that the party rescinding must put the other
party in *statu quo*. (*Conner* v. *Henderson*, 8 Am. Dec.
103; *Chance* v. *Commissioners, etc.*, 35 Am. Dec. 131; *Hyn-
son* v. *Dunn*, 41 Am. Dec. 100; *Waite* v. *Vinson* 14 Mont.
405.)

II. The transfer by plaintiff of twenty-five shares of stock
to her husband should defeat her right upon two grounds.
First. By selling the property or part thereof she determined
to treat it as her own, and consequently lost her right of
rescission. The property was hers if she wished to take it,
but if she intended to rescind she should not have exercised

any control over it, which would evidence an intention not to rescind. Second. She was not in a position to reconvey to O'Rourke that which she was required to reconvey in order to rescind. If she could offer O'Rourke 2,475 shares, and such would be a good tender, then any less number would have been equally efficacious. (*Bryant* v. *Isbrugh*, 74 Am. Dec. 655. Note page 661. *Bailey* v. *Fox*, 78 Cal. 389; *Kimball* v. *Cunningham*, 3 Am. Dec. 230; *Durrett* v. *Simpson*, 16 Am. Dec. 115; *Voorhees* v. *Earl*, 38 Am. Dec. 588.)

III.   No actual tender was made by plaintiff until the trial of the cause. This is not a tender of rescission, and we think should prove fatal to her recovery. (*Herman* v. *Hoffenegger*, 54 Cal. 161.)

IV.   Plaintiff did not give any notice of rescission upon the expiration of the year, and not until sometime afterwards. She should have rescinded at the time stipulated in her contract, and at no other time. She should not be allowed to ascertain whether the investment was a good one or not, but was held strictly to the time as provided in the agreement.

V.   The stock tendered was stock which the plaintiff had transferred to another after the expiration of the year. It is therefore contended :   (1) That this stock having been transferred after the time for rescission, and before the commencement of the action, this constitutes an act of ownership over the property which is absolutely incompatible with the right to rescind. That plaintiff by this act practically converted the property and waived any right of cancellation.   (2) The defendant is not required to accept the stock from any one but the plaintiff herself. The right to rescind is a personal right and can be enforced only by the party with whom the contract was made.   At the time of the tender O'Rourke objected to receiving the same, because as he was informed the same were attached.   (*McCulloch* v. *Scott*, 56 Am. Dec. 561; *Akerly* v. *Vilas*, 21 Wis. 89; *Grymes* v. *Sanders*, 93 U. S. 55; *Duncan* v. *Jeter*, 39 Am. Dec. 342; *Ray* v. *Thompson*, 66 Mass. 281; *Lynch* v. *Wilford*, 59 N. W. 311.)

*Toole & Wallace,* for Respondent.

I. Appellant contends that respondent should have notified him of her dissatisfaction precisely at the end of the year or lose her option under the contract. There was no time fixed under the contract for giving notice of her desire in the premises; indeed, there was no notice provided for at all. If the notice is required the parties not seeing proper to fix any time within which it should be given, the law allows a reasonable time. (*Chamberlain* v. *Fuller*, 9 Atl. (Vt.) 832, 4 New Eng. Rep. 614; Am. & Eng. Ency. of Law, Vol. 3, 929, sub. 100, page 932, and numerous authorities cited under notes 2 and 3.) The condition precedent to the right to rescind, as it is termed, is respondent's dissatisfaction with the investment or business at the end of a year. There being no provision at all for notice of such dissatisfaction, if necessary at all it is because the law implies that it shall be given. Delay in the exercise of the right may be evidence of a waiver of it, yet if exercised within a reasonable time this is all the law requires. (*Williams* v. *N. J. S. R. C.*, 29 N. J. Eq. 311, 319 and 320; *Williams* v. *N. J. S. R. C.*, 27 N. J. Eq. 277, 289 *et seq.*; *Atchinson, etc.*, v. *Burlingame, etc.*, 59 Am. Rep. 578.) The condition precedent existing on the 29th of March there is no room even for a presumption of acquiescence. (*Miller* v. *Cox*, 31 Pac. 161.) Assuming then that the law imports into this contract the duty of giving the notice the authorities clearly show that it was given within such time. (19 Am. & Eng. Ency. of Law, page 1090 and 1091, and numerous citations there given.)

II. It is of no consequence that the stock tendered may not have been the same stock issued for respondent's interest in the property, nor is it of any consequence that a part or all of it may have stood in the name of some person other than defendant. (*Rosevelt* v. *Brown*, 11 N. Y. 151, 152, 154.)

III. Appellant basing his refusal to pay upon utterly untenable grounds, dispensed with any further action on the part of the respondent, and cast upon himself the burden of show-

ing respondent's inability to comply. (*Hansen* v. *Staren*, 33 Pac. 266 *et seq.*; *Eames* v. *Heaver*, 43 Pac. R. 1120, 1122; *Newell* v. *Nicholson*, 17 Mont. 389; *Chum* v. *Buches*, 22 Pac. 426, 427.)

IV.   If appellant intended to stand on respondent's inability to comply with the contract he should have offered to pay or declined generally. But when he went further and repudiated the contract or put his refusal upon particular grounds which were not at all tenable, he precludes himself from interposing the objection urged and a tender in court satisfied the requirements of the law. (Hermann on Estoppel and Res. Adj., § 280, note 3, page 947; *Davis* v. *Arthur*, 96 U. S. 148; *Herberger* v. *Huseman*, 27 Pac. 428.)

V.   We submit that when appellant told respondent and her attorney Cotter that he wanted nothing to do with her and she must go to court, he waived a tender of the stock. (*Miserole* v. *Archer*, 3 Bosw. (N. Y.) 376; *Bradford* v. *Foster*, 87 Tenn. 11.) That when he refused upon the specific grounds that respondent should pay certain notes not due to him or provided for in the contract, he waived all other objections to the sufficiency of the tender. (*Whelan* v. *Riley*, 61 Mo. 565; Am. & Eng. Ency. of Law, Vol. 25, page 916, subd. 9, note 2.) That the refusal to accept because he was informed the stock had been attached dispensed with proof that she controlled or had the stock. (*Abrams* v. *Suttles*, Busb. (N. C.) 99; *Ashburn* v. *Poulter*, 35 Conn. 553.) That the evidence of respondent that appellant was absent from the state at the time he claims the tender should have been made, and which is taken as true in this case, dispensed with the tender. (*Kling* v. *Child*, 30 Minn. 366, 21 *Id.* 15; *Southworth* v. *Smith*, 7 Cush. (Mass.) 391.) That the offer to deliver the stock endorsed, which must for the purposes of this case be assumed, was a valid tender and whether indorsed or not, no objection was made on that account, which could have been remedied. (*Wilson* v. *Hill*, 88 Cal. 92; *Davis* v. *Leyson*, 17 Mont. 220.) That under appellant's theory of the case a tender or its equivalent only required respondent to keep the

stock where she could deliver it upon demand, within a reasonable time, and she produced it in court without any demand. (*Sanders* v. *Peck*, 131 Ill. 407; *Norton* v. *Baxter*, 41 Minn. 146.)

VI. The appellant, by his rejection of the tender, or declarations and actions dispensing with it, converted the respondent into a bailee, who thereafter held the stock in that capacity for him, and who was liable to him for a conversion of it. (*Sheldon* v. *Skinner*, 4 Wend. (N. Y.) 525; 21 Am. Dec. 161; *Lamb* v. *Laythrop*, 13 Wend. (N. Y.) 95, 97 Am. Dec. 174; *McGillon* v. *Smizer*, 18 Mo. 111; *Fisk* v. *Holden*, 17 Texas 408; *Oakland, etc.* v. *Applegarth*, 7 Pac. 139.) Conceding that the delivery of the stock and payment of the contract price were concurrent acts, the tender of the stock or its equivalent fixed the liability of appellant to pay, and the price of the stock is what is sued for. (*Clark* v. *Continental, etc.*, 57 Ind. 138; *Weiss* v. *Mau Chunk, etc.*, 58 Pa. St. 295, 301; *Quick* v. *Lemon*, 105 Ill. 578.)

HUNT, J.—The plaintiff is seeking to enforce the provisions of the agreement entered into between herself and the defendant, O'Rourke, and, being dissatisfied, sues to avail herself of the right given to her under the contract to have the purchase price of $2,500 refunded to her, together with a sum equal to one-fourth of the profits of the business during the period of one year. The district court was of opinion that plaintiff had made out her case, and gave her a judgment. We will briefly notice the errors relied on by appellant, defendant.

The defendant objects to the testimony and findings to the effect that the agreement between the parties should apply to the Northwestern Brick and Supply company, and argues that it only applied to the original sale of the property of the Western Star Brick Yard and Brick Works.

We do not think the point is well taken. The concern in which the plaintiff bought a one-fourth interest was merged into the Northwestern Brick and Supply company. Shortly

after the contract was entered into, the corporate stock of the new company was issued to plaintiff, defendant, and other owners. This stock was received by the parties to the agreement, and took the place of the title of the property conveyed. (*Mayo* v. *Knowlton*, 134 N. Y. 250, 31 N. E. 985.) It was satisfactorily established upon the trial before the referee that the parties agreed to this merger or transfer. Again, no issue was raised in the pleadings upon the averment of the plaintiff that the original company was merged into the Northwestern Brick and Supply company. The case was tried, too, upon the theory that the stock issued to the owners represented their title in the property made the subject of the agreement between the parties to this action. We therefore think that if a tender by plaintiff was necessary at all, 2,500 shares of the stock of the corporation formed was all that was necessary under the agreement to put the defendant (appellant) in *statu quo.*

The question of tender is by far the most important point in the case. The defendant urges that there never was a tender until trial, and no evidence of waiver by defendant. It appears by plaintiff's testimony that prior to the expiration of the year at the end of which she could avail herself of her right to be repaid the $2,500 and to redeliver the stock to the defendant, she expressed dissatisfaction with the business. About 30 days before the expiration of the year, she took her stock, handed it to the defendant, and asked him to give her her money, and whatever the books showed her share of the profits might be. The defendant told her that she could have nothing. Plaintiff does not testify, nor does the evidence show, that she ever offered by technical tender to the defendant the stock at any time after March 29, 1893, and before the trial of the action, but it does appear that an account of Mrs. Schultz for the $2,500 was presented for collection to the defendant in March or April, 1893; that the defendant looked it over, and said he would pay the account whenever she paid her share of a promissory note on which they were together bound. The defendant himself testified that Mrs.

Schultz did not notify him before the 29th of March that she was ready and willing to reconvey or relinquish her rights in the corporation, but admitted that he always told her that he would give her the original money that she had put into the investment; that these conversations occurred in December, 1892, or January, 1893, but that the plaintiff told him she wanted a dividend. The defendant also admitted that he had had a conversation with Mr. Cotter, an attorney at law, representing the plaintiff, and said that he had told Mr. Cotter, after March 29, 1893, that there were certain moneys due by Mrs. Schultz for moneys loaned and other matters, and that when Mr. Cotter told him that Mrs. Schultz had directed him to settle the thing up, Cotter said : ''I would try and settle up on that basis;'' that plaintiff told him in April that she was dissatisfied, and wanted a dividend, but that she never took any stock to him before the 29th of March, 1893, and never made an offer to deliver the stock to him. Mr. Cotter testified that about the time that the year expired under the contract he went to the defendant at the request of plaintiff to get a settlement of their matters; that he told defendant that plaintiff was anxious to settle the matter up; that defendant said there was a note in the bank, and that, if plaintiff would pay her share on that note, he was ready to settle with her. Mr. Cotter said that he had no authority to accept anything but what the contract called for, and could not make such a settlement. A day or two after that Cotter advised O'Rourke that he had better settle the thing up in some way, and that he would see Mrs. Schultz, to which O'Rourke replied he would have nothing to do with it.

From this evidence we do not think that there ever was a formal actual tender of any stock after March 29, 1893, until the trial. The tenders made before that time were not good, because under the terms of the contract itself the defendant was not obliged to return to her the $2,500 invested until the expiration of one year. All such tenders were premature. *Bowen* v. *Julius*, (Ind. Sup.) 40 N. E. 700. There having been, therefore, no actual tender of the stock after the expira-

ation of the year, until the trial at least, we must ascertain whether or not the acts and declarations of the defendant dispensed with the formality of a tender.

Turning from the immediate question an instant, let us say that we are not convinced that under the terms of the agreement it was necessary for plaintiff, prior to suit, to make a tender by actually offering to defendant the pieces of paper constituting the certificates of stock before she could recover. (Pomeroy's Eq. Jur. § 1407, and note.) The covenants of the agreement were mutual and dependent. If she were dissatisfied at the end of the year, then, and in that event, defendant agreed to refund to her the $2,500 she paid for her interest in the business, and she in turn agreed to reconvey to him such interest. The performances were to be simultaneous. That she was dissatisfied, and expressed such dissatisfaction to defendant, is indisputably proven. Such being the case, is it not a fair construction of the contract to say that when she made known that dissatisfaction, it devolved upon defendant to pay or offer her the $2,500, agreed to be paid, and thereupon it at once became her duty to reconvey to him? We think so. There was no express covenant on plaintiff's part to tender, and it would seem that, where the covenants between the parties were mutual and dependant, the necessity of strict formalities by a tender before trial ought not to have been imposed upon plaintiff. (*Holmes* v. *Holmes*, 9 N. Y. 525; 12 Barb. 137; *Irvin* v. *Gregory*, 13 Gray, 215; *Kane* v. *Hood*, 13 Pick. 281.)

But, granting that plaintiff ought to have actually presented the certificates of stock to defendant after March 29, 1893, we think that the acts and declarations of defendant dispensed with greater formality than was observed. When he told Cotter that he was ready to settle when plaintiff paid her share on a certain note, not a liability of hers under the contract, and again thereafter, when approached for a settlement, said he would have nothing to do with the matter, these declarations were equivalent to saying that the stock alone would not be received if actually offered. There is ample justification to

infer that the production of the certificates and their formal tender was waived. It was, therefore, unnecessary to offer the certificates themselves, as the law, under such circumstances, does not require a man to perform a nugatory act. (*Wesling* v. *Noonan*, 31 Miss. 602; *Hazard* v. *Loring*, 10 Cush. 267; 7 Wait, Act. & Def. 593; *Ashburn* v. *Poulter*, 35 Conn. 553.)

We cannot uphold the contention of appellant that plaintiff had lost her right to reimbursement by having transferred 25 shares of the stock to her husband before the year had expired. One share of stock was as good as another. She was evidently willing to transfer 2,500 shares, and there is nothing to show that she was not fully able to transfer 2,500 shares, as required by the contract, the instant that defendant would comply with his part of the agreement. (*Eames* v. *Haver*, (Cal.) 43 Pac. 1120.) The identical shares originally made over to her were not necessarily the only shares which she could return to defendant. As said, one share was as good as another, and represented the same interest in the property. (*Colby* v. *Stevens*, 38 N. H. 191; *Thompson* v. *Lyon* (W. Va.) 20 S. E. 812; *Park* v. *Wiley*, 67 Ala. 310.)

But if we concede that there was no waiver of formal tender before trial, still our decision may be safely put upon another ground. Upon the trial there was a formal tender of 2,500 shares, indorsed in blank, it appears, and a demand of the return of $2,500 paid for the stock. This was refused by defendant "on the ground that it is attached according to my information, and I want everything straightened up before I accept it." No objection was made to the sufficiency of the tender or to its form, except that the stock was attached, as defendant was informed. The defendant cannot now urge any reason for refusing the stock offered on the trial other than that expressly relied on. He is held to have waived the objections that plaintiff did not have the stock in her own name. (*Wood* v. *Babb*, 16 S. C. 427; *Lathrop* v. *O'Brien* (Minn.) 58 N. W. 987; *Whelan* v. *Reilly*, 61 Mo. 565; Lawson on Rights, Remedies and Practice, § 2535; 2 Parsons on Cont., 645;

*Thayer* v. *Meeker*, 86 Ill. 470; *Herberger* v. *Husman* (Cal.) 27 Pac. 428.)

Our conclusion upon the whole case is that the plaintiff is entitled to the sum found to be due to her by the district court, and that upon payment of such sum defendant is entitled to 2,500 shares of stock tendered and left with the clerk of the court, and agreed to be transferred by plaintiff under the contract. Judgment affirmed.

*Affirmed.*

DE WITT, J., concurs.   PEMBERTON, C. J., not sitting.

