O'ROURKE, RESPONDENT, *v.* SCHULTZ, APPELLANT.

[No. 1,138.]

[Submitted July 12, 1899. Decided October 25, 1899.]

*Sale—Rescission—Assignment Pendente Lite—Objections—Waiver—Conditional Judgment—Injunction—Corporations—Transfer of Stock—Rights of Transferee—Tender of Shares—Appeal and Error—Law of the Case.*

1. The only exceptions which may be considered on appeal are those taken, or preserved to, the appellant.
2. Where a contract provided that, if the purchaser of property should become dissatisfied, she should be entitled to a return of the purchase price on surrender of the property sold, the fact that pending the suit to enforce such agreement she assigned the contract is immaterial, since Code of Civil Procedure, Section 22, authorizes the continuance of a suit in the name of the original party, or substitution of the transferee, where plaintiff's claim is transferred *pendente lite.*
3. Where, in an action on a contract, it appeared that plaintiff's interest had been assigned to another *pendente lite,* and defendant made no objection to such assignment in that action, he cannot subsequently object thereto in a proceeding to restrain the enforcement of the judgment recovered.
4. Where, after a judgment for the rescission of a contract on plaintiff's surrender of property received thereunder, it appears that she was unable to make such surrender, defendant is entitled to restrain the enforcement of the judgment.
5. Where a transfer of corporate shares is valid, no irregularity in the issuance of the stock certificate to the transferee can affect her interest or lessen her rights to the stock transferred.
6. A contract provided that, if the purchaser of a one-fourth interest in brick works should become dissatisfied with the purchase, she should be entitled to a return of the purchase price on surrender of the property sold. Subsequently, by agreement of both parties, her interest was transferred to a corporation, and 2,500 shares of its stock received, as representing the property. After the purchaser had sued to rescind the contract, she assigned it, and her assignee tendered the vendor 2,500 shares, to which she was legally entitled as against the corporation. *Held,* that such tender was valid, notwithstanding alleged irregularities in the issuance of the certificate representing the stock.
7. Where defendant objected to a tender of corporate shares on the ground that they had been attached in the hands of a former owner only, he cannot subsequently object to such tender on the ground of irregularities in the issuance of the certificates.
8. Where, on appeal from an action to enforce a rescission of a contract for the sale of property represented by corporate shares, it was determined that the identical shares originally owned by plaintiff need not be returned, but any shares representing the value of the property might be tendered, such determination is the law of the case on a subsequent appeal of a proceeding to restrain the enforcement of the judgment.

*Appeal from District Court, Silver Bow County; John Lindsay, Judge.*

Injunction by John O'Rourke against Mary Schultz to restrain the enforcement of a judgment. From a judgment in favor of plaintiff, defendant appeals. Reversed.

*Mr. F. T. McBride, Mr. John W. Cotter* and *Messrs. Toole, Bach & Toole,* for Appellant.

In the opening portion of this argument we will assume that it was necessary for Mrs. Schultz, before or at the trial, to tender the 2,500 shares of stock; and will attempt to show that, even under this view of the case, neither the complaint nor the testimony shows facts sufficient to sustain the preliminary injunction, or the awarding of a new trial of the original cause of action. There are two propositions of law which, when applied to the facts in this case, should, in our opinion, result in a reversal of the judgment of the order appealed from. (1st) Equity will not interfere to set aside a judgment except where the plaintiff (defendant in the judgment) was prevented by fraud, unavoidable accident, mistake or surprise—from availing himself of a defense to the original action. (2nd) Where he also shows that he was free from neglect. These are elementary propositions and are supported by the following authorities: *Mayor of New York* v. *Brady,* 115 N. Y. 599; *Pico* v. *Cohn,* 91 Cal. 129, 25 Pac. 970, affirmed on rehearing 27 Pac. 537; *Brick* v. *Burr,* 47 N. J. Eq. 189; *Brown* v. *County of Buena Vista,* 95 U. S. 157; *Crim* v. *Handley,* 94 U. S. 652; *Hendrickson* v. *Hinckley,* 17 How. (U. S.) 443; *U. S.* v. *Throckmorton,* 98 U. S. 61; *Vance* v. *Burbank,* 101 U. S. 514; *Steel* v. *Smelting Co.,* 106 U. S. 447–453; *Greene* v. *Greene,* 2 Gray 363; *Zellerbach* v. *Allenberg,* 67 Cal. 296; *U. S.* v. *White,* 14 Fed. 561; *Dringer* v. *Receiver,* 42 N. J. Eq. 573 and cases cited; *U. S.* v. *Hancock,* 40 Fed, 851–854; *Amador C. & M. Co.* v. *Mitchell,* 59 Cal. 168; *Field* v. *Flanders,* 40 Ill. 470; *Hanley* v. *Hanley,* 114 Cal. 690 and cases cited; *Stein* v. *Benedict,* 83 Wis. 603, 614; *Town of Andes* v. *Millard,* 70 Fed. 515–517; *Barnet* v. *Kilbourne,* 3 Cal. 327; Freeman on Judgments, Vol. 2, Sec. 503; *Allen* v. *Currey,* 41 Cal. 318; *Knox*

*County* v. *Harshman,* 133 U. S. 152; *Gray* v. *Barton,* 62 Mich. 186–196–7; *Codde* v. *Mahiat,* 66 N. W. 1093 (Mich.); *Liebry* v. *Parks,* 4 Hammond (Oh.) 469; *Green* v. *Dodge,* 6 Hammond (Oh.) 80; *Convay* v. *Ellison,* 14 Ark. 360; *Wingate* v. *Haywood,* 40 N. H. 437; *Weir* v. *Vail,* 65 Cal. 468; *Hamilton* v. *McLean,* 139 Mo. 675, 687; *Ratliff* v. *Stretch,* 130 Ind. 285; *Hollinger* v. *Reeme,* 138 Ind. 363; *Woodward* v. *Pike,* 43 Neb. 777, 62 N. E. 230; *Cotzhausen* v. *Kerting,* 29 Fed. 821; *Edmanson* v. *Best,* 57 Fed. 531.

We believe the following propositions or rules of law are well established by the foregoing cases:

1st. That in order to set aside a judgement or restrain the execution thereof on the ground of fraud,—the fraud must be a fraud which is collateral to the issue, and not a fraud (or even a perjury) in the presentation of evidence, or the suppression of evidence.

2nd. That the plaintiff in the equity suit must show in his bill that he was not guilty of negligence or laches—to excuse his failure to defend at law.

3d. That he must show due diligence—and the facts alleged (and proved) must be inconsistent with the least neglect.

4th. That he must show that he had in vain exhausted his remedies at law. This is a general principle in equity.

5th. He must show affirmatively in his pleadings why he had not previously discovered the fraud which he alleges, and when and how he did discover it.

*Mr. John J. McHatton* and *Mr. John O. Bender,* for Respondent.

"Without attempting to draw any precise line to which courts of equity will advance, and which they cannot pass, in restraining parties from availing themselves of judgments obtained at law, it may safely be said that any fact which clearly proves it to be against conscience to execute a judgment, and of which the injured party could not have availed himself in a court of law; or of which he might have availed himself at

law, but was prevented by fraud or accident unmixed with any fault or negligence in himself or of his agents, will justify an application of a court of chancery." (*Marine Insurance Co.* v. *Hodgson*, 7 Cranch (U. S.) 332; *Crim* v. *Handly*, 94 U. S. 657.) "In all these cases and many others which have been examined relief has been granted on the ground that by some fraud practiced directly upon the party seeking relief against the judgment or decree, that party has been prevented from presenting all of his case to the court." (*United States* v. *Throckmorton*, 98 U. S. 61.) In *Borland* v. *Thornton* (12 Cal. 440) and in *Riddle* v. *Baker* (13 Cal. 295), the rule governing cases of this character is clearly laid down. (*Spencer* v. *Vigneaux*, 20 Cal. 442.) "Fraud in concealing from the complainant a good and valid defense to the action will entitle an injunction against a judgment that is contrary to conscience, where complainant has not been guilty of negligence." (*Merriam* v. *Walton*, 30 L. R. A. 786, notes and cases cited.) "In *Norman* v. *Burns*, 67 Ala. 248, it was said that if the defense was prevented by fraud, accident or surprise, or the act of the adversary, and the judgment is unjust, it would be enjoined. And where the defense was that the bill in suit was a forgery, and the excuse for not defending at law was that there was a similar genuine bill which was believed to have been the one in suit and which was not discovered until after judgment. (*Farrel* v. *Allen*, 5 W. Va. 43; *Norwegian Plow Co.* v. *Bollman*, 31 L. R. A. 747, notes and cases cited.) Where there is a fraudulent suit by a party, who is not the real party in interest, in order to prevent a defense, and it is not discovered until after judgment, an injunction will be granted. (*Hickerson* v. *Raiguel*, 2 Heisk. 329; *Stovall* v. *Northern Bank*, 5 Smedes & M. 17; *Davis* v. *Tileson*, 47 U. S., 6 How. 114, 12 L. Ed. 366; *Greenleaf* v. *Maher*, 2 Wash. C. C. 393; *Goad* v. *Hart*, 8 Smedes & M. 787; *Dady* v. *Brown*, 76 Iowa 528; *Marchman* v. *Sewell*, 93 Ga. 653.) The court has jurisdiction in a subsequent action to set aside a judgment obtained by fraud. (*Cole* v. *Langford*, (1898) 2

Q. B. 36, 67 L. J. Q. B. N. S. 698.) One against whom a final judgment has been rendered may by a direct proceeding for that purpose have the case reopened upon averments that he was prevented from making a valid defense by fraud, accident or the act of the adverse party, unmixed with negligence on his part. (*Hammond* v. *Atlee*, 39 S. W. 600; 15 Tex. Civ. App. 267.) A court of equity will vacate a judgment in a proper proceeding and grant a new trial, where it appears that the judgment depends for its support on the perjured evidence of the successful party given at the trial, that the defeated party had a valid defense, which he was prevented from establishing by such perjury, and he had not been guilty of negligence and has exhausted all his ordinary legal remedies for obtaining the vacation.'' (*Munro* v. *Callahan*, 75 N. W. 151; 55 Neb. 75, citing *Graver* v. *Faurot*, 46 U. S. App. 268; 76 Fed. Rep. 257, 22 C. C. A. 156; *Laithe* v. *McDonald*, 12 Kan. 340; *United States* v. *Throckmorton*, 98 U. S. 61, 25 L. Ed. 93; *Ward* v. *Southfield*, 102 N. Y. 293; *Asbury* v. *Frisz*, 148 Ind. 513, 47 N. E. 328.) These temporary injunctions rest largely in the discretion of the district court. (*Nelson* v. *O'Neill*, 1 Mont. 284; *Atchison* v. *Peterson*, 1 Mont. 561; *Mining Company* v. *Murray*, 9 Mont. 475; *Klein* v. *Davis* 11 Mont. 155; *Anaconda Mining Co.* v. *B. & B.* 17 Mont. 519; *Red Mountain Consolidated Mining Co.* v. *Esler*, 18 Mont. 174; *Bennett Bros. Co.* v. *Congdon*, 50 Pac. 556.)

MR. JUSTICE PIGOTT delivered the opinion of the Court.

In the spring of 1892 the plaintiff, O'Rourke, sold to the defendant, Mary Schultz, an undivided fourth interest in the Western Star Brick Yard & Brick Works for $2,500; the entire property was subsequently transferred to a corporation; with the consent of all concerned, one-fourth (2,500) shares of the corporate stock was duly delivered, by certificates representing the stock, in lieu of the one-quarter interest in the property itself, all the terms of the agreement of sale and purchase being applicable to the contractual rights as thus

immaterially modified.  By the terms of the contract the purchaser, Schultz, was entitled, if dissatisfied with the investment or the business at the end of one year from the date of the contract, to demand and receive from the seller, O'Rourke, the amount of the purchase price, and O'Rourke, upon making such repayment, was entitled to a retransfer of the property sold.  Conformably to the agreement, Schultz requested repayment, and offered to return the stock representing the property sold to her, and, upon the refusal of O'Rourke to comply with the demand, Schultz brought an action and recovered a judgment therein against him for the sum of $3,168, which judgment was affirmed by this Court. (*Schultz* v. *O'Rourke*, 18 Mont. 418, 45 Pac. 634.)

The present action was instituted by the judgment debtor, O'Rourke, to restrain his judgment creditor, Schultz, from enforcing the judgment in *Schultz* v. *O'Rourke;* it being asserted in his behalf that it was obtained by fraud, and that he was prevented by the deceit of the plaintiff in the former action from presenting and proving in defense some of the matters now relied upon by him, and also that some of the other matters now urged were not material to any of the issues made therein.  Upon the hearing of an application for an injunction *pendente lite*, the court below granted such injunction, and from the order in that behalf Schultz, the defendant, appeals.

Although the record is somewhat long, and the facts to be deduced therefrom not readily apparent, and although many questions have been fully discussed in the briefs and at the bar, the only question which deserves very serious consideration is whether at the time the judgment was rendered in *Schultz* v. *O'Rourke*, requiring O'Rourke to repay to Schultz the agreed purchase price, she was able to comply with the requirement of that judgment, by transferring to O'Rourke the shares of stock which then represented the property sold by O'Rourke to Schultz.

In the action which resulted in the judgment whose enforcement is now sought to be enjoined, O'Rourke, the defendant

therein, contended that Schultz, the plaintiff in that action, should have made to the defendant therein a formal tender of the stock before trial, and that the failure to allege and prove such tender constituted a fatal defect in the plaintiff's case; but this Court held that no such tender was necessary, as the covenants between the parties were mutual and dependent, and the performances thereunder were to be simultaneous, and that, even if such a tender· had been required, the defendant, O'Rourke, had waived the production of any certificate of stock, or its absolute formal tender, either before or at the trial,—though perhaps an offer to retransfer the shares conditionally upon the simultaneous repayment of the purchase price to her was necessary to be made at the trial. But, notwithstanding these rulings by this Court in the former case between these same litigants, the necessity for such tender is now again earnestly urged by O'Rourke, the present plaintiff, and is treated even by Schultz as a proper subject for further discussion.    As this Court does not contemplate the rehearing of the former appeal, and as the views heretofore announced will be adhered to, we here quote and repeat with approval a portion of the opinion:   "The question of tender is by far the most important point in the case.   *   *   * From this evidence we do not think that there ever was a formal actual tender of any stock after March 29, 1893, until the trial.    The tenders made before that time were not good, because under the terms of the contract itself the defendant was not obliged to return to her the $2,500 invested until the expiration of one year.    All such tenders were premature. *   *   *   The covenants of the agreement were mutual and dependent.    If she were dissatisfied at the end of the year, then and in that event defendant agreed to refund to her the $2,500 she paid for her interest in the business, and she in turn agreed to reconvey to him such interest.    The performances were to be simultaneous.    That she was dissatisfied, and expressed such dissatisfaction to defendant, is indisputably proven.    Such being the case, is it not a fair construction of the contract to say that, when she made known that dissatis-

faction, it devolved upon defendant to pay or offer her the $2,500 agreed to be paid, and thereupon it at once became her duty to reconvey to him? We think so. There was no express covenant on plaintiff's part to tender, and it would seem that, where the covenants between the parties were mutual and dependent, the necessity of strict formalities by a tender before trial ought not to have been imposed upon plaintiff. * * * But, granting that plaintiff ought to have actually presented the certificate of stock to defendant after March 29, 1893, we think that the acts and declarations of defendant dispensed with greater formality than was observed. * * * There is ample justification to infer that the production of the certificates and their formal tender was waived. It was, therefore, unnecessary to offer the certificates themselves, as the law, under such circumstances, does not require a man to perform a nugatory act." We shall not, therefore, consider any of the evidence or arguments which seem to rest upon the expected re-examination of the alleged right to have the stock certificates transferred, or offered to be transferred, by Schultz, as a condition precedent to her right to maintain an action for the purchase price thereof; that question has been finally adjudicated in this Court.

Having heretofore determined, and now reaffirmed, the right of Schultz, upon the pleadings and proofs involved in the former action, to recover the judgment now attacked, we approach the consideration of the present case with a full appreciation of the unusual and extraordinary nature of the relief sought; for the plaintiff, O'Rourke, having had his day in court as defendant in *Schultz* v. *O'Rourke*, is manifestly required to show very substantial reasons for invoking the aid of the courts to the end that he may be protected from the enforcement by writ of execution of a demand already formally and finally adjudged to be payable by him.

What, then, are the circumstances which are supposed to justify the judgment debtor in resisting the judgment, and in asking the Court to enjoin its enforcement? This Court, in

the concluding paragraph of the opinion handed down in the former case, said: "Our conclusion upon the whole case is that the plaintiff is entitled to the sum found to be due her by the district court, and that upon payment of such sum defendant is entitled to 2,500 shares of stock tendered and left with the clerk of the court, and agreed to be transferred by plaintiff under the contract." The judgment debtor, O'Rourke, now claims that Schultz was not the owner of the contract of sale at the time when the judgment was rendered for the payment of the amount due under that contract; that she was not then, nor had she been for a long time prior thereto, the owner of 2,500 shares, and could not, therefore, comply with her covenants, nor with the requirements of the judgment itself; that the certificate of stock left with the clerk of the district court for O'Rourke was and is void, and that it would be inequitable and against conscience to permit the judgment to be executed, when the obligations of the judgment creditor have not been performed and cannot be enforced; and the plaintiff further insists that he was prevented from presenting these defenses in the other action by reason of the false representations of the plaintiff in that, and defendant in this, action.

1. The first cause of action stated is, in substance, that Schultz has a judgment against O'Rourke for $3,168, and that O'Rourke has a judgment against Schultz for $693 in the same court; and that Schultz is insolvent. The relief prayed is that the smaller judgment be set off *pro tanto* against the larger. To this statement a demurrer for insufficiency was interposed and sustained. Whether or not the order sustaining it was right is not before this Court, since the only exceptions which may be considered are those taken by, or preserved to, the appellant, who is the party claiming to be aggrieved by the order or judgment of the court below. (*Buck* v. *Fitzgerald*, 21 Mont. 482, 54 Pac. 942.)

2. Whether or not Schultz during the pendency of *Schultz* v. *O'Rourke* assigned the contract of sale to one Fanny Matusevitz, either in pledge, or so as to transfer the general own-

ership, or otherwise, is not material, in so far as O'Rourke is concerned. If he had no knowledge that an assignment had been made, he was justified in continuing to regard Schultz as the only person other than himself who was interested in the contract, the performance of the conditions of which was due to Schultz from him, and from her to him; fulfillment upon his part of its covenants would work his discharge, and the recovery of a judgment fixing liability would prevent the maintenance of an action by Matusevitz upon the contract. At the time the former action was commenced, May 23, 1893, Schultz was, for aught that appears to the contrary, possessed of the same interest in the contract that she had when it was made; the assignment was executed on or after June 14, 1894, and pending the suit, and under such circumstances the action could be continued in the name of Schultz notwithstanding the assignment, for Section 22 of the Code of Civil Procedure (Compiled Statutes of 1887) declares that in case of a transfer of interest pending suit the action "may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted." Moreover, the original contract itself, with the assignment to Matusevitz thereon endorsed, constituted part of the plaintiff's proof in *Schultz* v. *O'Rourke,* was received in evidence at the trial, and was subject to the inspection of O'Rourke, whose duty it was at the time to make the objection now urged, or apply for a substitution of Matusevitz for Schultz as plaintiff. Having done neither, he may not now be heard to interpose the objection, for he has waived it by remaining silent when he might have spoken. We are not to be understood, however, as intimating, much less as deciding, that the written assignment, of itself, was, under the circumstances, as between O'Rourke and Matusevitz, notice to O'Rourke sufficient to charge him with knowledge that Matusevitz had become the successor to Schultz's rights in the contract.

3. O'Rourke alleges in his complaint, and asserts that he has proved, that when the judgment was rendered Schultz was not the owner of 2,500 shares of the stock, and that the cer-

tificate delivered to the referee, and by him deposited with the clerk of the district court, was and is void. He contends with plausibility and force that as the obligations of the several parties to the contract of sale were held by this Court to be mutual and dependent, and the performances thereof were required by the contract and also by the judgment to be simultaneous, it would be inequitable to permit Schultz to collect her judgment against O'Rourke if it should appear that she was then, and ever since has been, unable to discharge her own obligation, arising out of the same contract, to retransfer the shares. We are inclined to agree with this contention, and, if the proofs sustained his allegations, we should deem it our duty to sanction the protection which the court below has endeavored to afford O'Rourke against the supposed failure of Schultz to discharge her obligations as recognized in the judgment given in her favor, and by which her discharge of those obligations was declared to constitute a right of O'Rourke maturing simultaneously with his discharge of his obligations to her thus adjudicated.

We are unable, after an examination of the record, to find in the evidence any substantial support for the allegations of O'Rourke touching Schultz's relation to the stock issued by the corporation in which they both became interested under the circumstances disclosed by the proofs in the former case. Analysis of the stock book and the testimony shows indisputably that the only shares which were ever issued were issued and disposed of as follows, the corporation having been organized in April, 1892:   On April 12, 1892, 20 certificates, each for 500 shares, and amounting in all to 10,000 shares, were issued; certificates 1, 2, 3, 4, and 5, representing 2,500 shares, were issued to one Carl Schultz, the husband of Mary Schultz, the former plaintiff and present defendant; certificates 6, 7, 8, 9, and 10, for 2,500 shares, were issued to John O'Rourke; certificates 11, 12, 13, 14, and 15, for 2,500 shares, were issued to one Lisker; and certificates 16, 17, 18, 19, and 20, for 2,500 shares, were issued to one Le Claire. Although the authorized capital stock of the corporation

justified the issuance of 20,000 shares, each having the par value of $1, no greater issue at any one time than 10,000 shares appears from the records, and, consistently with the agreement of the parties, one-fourth of this total issue, namely, 2,500 shares, was issued immediately after the incorporation to Carl Schultz, the husband of Mary Schultz, who had purchased a one-fourth interest in the property then held by the corporation. It m ay be observed that the 2,500 shares issued to Lisker have never been transferred, and are being now still owned by him, they may be eliminated from all further investigation as to subsequent. transfers or changes of ownership; and we have therefore to deal only with the 2,500 shares originally issued to Carl Schultz, the 2,500 shares originally issued to John O'Rourke, and the same number issued to Le Claire. Pursuing the inquiry chronologically, we find that on April 23, 1892, certificate 21, for 2,400 shares, was issued to Le Claire, and certificate 22, for 100 shares, was also issued to the same person, certificates 16, 17, 18, 19, and 20, formerly issued to Le Claire, being simultaneously canceled, and his holding being in no way modified by the new issue; on the same day, however, certificate 21, for 2,400 shares, was canceled, and certificate 23, for a like amount of shares, was issued to one Davis, trustee, thus still preserving the total amount of the original issue. At the close of that day the stock holdings, as disclosed by the certificates, were, therefore, as follows: Lisker, 2,500 shares; Carl Schultz, 2,500 shares; John O'Rourke, 2,500 shares; Le Claire, 100 shares; and Davis, trustee, 2,400 shares,—a total of 10,000 shares, as before. On June 6, 1892, certificates 6, 7, 8, 9, and 10, for 2,500 shares, originally issued to John O'Rourke, were canceled, and five new certificates, numbered 24, 25, 26, 27, and 28, each for 500, and amounting in all to 2,500 shares, were issued to one Fransman, the transaction constituting a mere transfer of the original O'Rourke shares to Fransman. On the same day certificates 1, 2, 3, 4, and 5, issued to Carl Schultz for 2,500 shares, were canceled, and new certificates 29, 30, 31, and 32, for 500 shares each, and

certificate 33, for 475 shares, were issued to Mary Schultz, and certificate 34, for 25 shares, was issued to Carl Schultz,—making a total reissue of 2,500 shares; the transaction being simply a transfer from Carl to Mary of 2,475 of the shares originally issued to him, and still preserving the issue of 10,000 shares; the holdings at the close of that day being, as shown by the certificates: Lisker, 2,500 shares; Fransman, 2,500 shares; Mary Schultz, 2,475 shares; Carl Schultz, 25 shares; Le Claire, 100 shares; and Davis, trustee, 2,400 shares. On June 16, 1892, we find that the shares represented by certificates 24, 25, 26, 27, and 28, which had theretofore been issued to Fransman, each for 500 shares, and amounting in all to 2,500 shares, and which had been transferred to Fransman by John O'Rourke, were canceled, and new certificates 35, 36, 37, 38, and 39, each for 500 shares, and amounting in all to 2,500 shares, were issued to one Thomas O'Rourke,—the transaction being merely a transfer of the Fransman stock to Thomas O'Rourke, and still preserving the original total issue of 10,000 shares; the stock holdings at the close of that day, as represented by certificates, being: Lisker, 2,500 shares; Thomas O'Rourke, 2,500 shares; Mary Schultz, 2,475 shares; Carl Schultz, 25 shares; Le Claire, 100 shares; and Davis, trustee, 2,400 shares,—a total of 10,000 shares, as theretofore. There seems to have been no change in the stock issue after June 16, 1892, until October 15, 1893, when certificate 23, issued theretofore to Davis, trustee, for 2,400 shares, was indorsed by Davis, surrendered and canceled, and certificate 22, theretofore issued to Le Claire, was surrendered and canceled, and the stubs show that they were reissued to Matusevitz on October 15, 1893, though neither of the stubs specifies the number of the subsequent certificate by which the reissue was made. Manifestly this transfer of the Le Claire 100 shares, and the Davis, trustee, 2,400 shares, to Matusevitz, did not materially change the stock holdings, nor alter the total issue of 10,000 shares. The only certificate shown by the record to have been issued thereafter is certificate 40, the stub of which

shows that it was issued to Matusevitz for 2,500 shares on July 24, 1894, and we are forced to conclude that this certificate is a reissue of certificates 22 and 23, which had theretofore been issued, respectively, to Le Claire, and Davis, trustee, and thereafter canceled, the stubs of which disclose that the stock represented by these certificates was reissued to Matusevitz, and hence we must believe that on July 24, 1894, the holdings, as shown by the certificates, were: Lisker, 2,500 shares; Thomas O'Rourke, 2,500 shares; Mary Schultz, 2,475 shares; Carl Schultz, 25 shares; and Matusevitz, 2,500 shares. We note that the stub of certificate 40, then owned by Matusevitz, as heretofore shown, explained that this certificate was surrendered by her, canceled, and reissued on July 25, 1894, to John O'Rourke, for 2,500 shares, but the stub does not show the number of the new certificate under which the reissue was made, nor does the record contain either the new certificate or its stub, but as the evidence does show that a certificate for 2,500 shares in the name of John O'Rourke was delivered to the referee, and by him lodged with the clerk of the district court, the inference is warranted that this refers to the old assigned certificate, No. 40, or that the new certificate, if issued, is numbered 41; and as certificate 40 had been therefore lawfully issued to Matusevitz, and had been transferred by her to O'Rourke, we are at least constrained to the conclusion that she was entitled to demand the issuance of a proper certificate to her assignee, and that such certificate issued to O'Rourke, as the transferee of Matusevitz, would have involved no improper exercise of power by the executive officers issuing it, and even if the paper representing these shares, and which is called a "stock certificate," was not signed by the proper officer of the corporation, nevertheless the assignment of 2,500 shares by Matusevitz to O'Rourke would at the least invest in him the right to have such a certificate properly issued, and would meanwhile transfer to him the full ownership of the shares which would be represented by that certificate when duly issued.

The foregoing is a correct chronological statement of all of

the stock issues of the corporation, although there are some transfers by indorsement, (so called) not yet referred to, because not represented by issues of new certificates, and some difference of opinion may exist as to what particular prior issues are represented by subsequent issues; but, however essential these details may be to a complete narration of the stock transactions, they do not materially modify the relations of the parties to the stock holdings, nor do they affect the rights of the parties to this action. That we may not seem to have overlooked any of the features of the case, we deem it not improper to review briefly the other circumstances which are regarded as significant and important by O'Rourke. The O'Rourke stock may now be eliminated, as the Lisker stock has already been, from all further investigations, as O'Rourke's shares were merely transferred and reissued to Fransman, and then transferred and reissued to Thomas O'Rourke, no dispute concerning any of these issues or reissues having arisen.

Certificates 1 to 5 were originally issued to Carl Shultz, and 16 to 20 to Le Claire; no suggestion has been made involving a controversy as to the regularity of either of these issues. Certificates 1 to 5, for 2,500 shares, were surrendered by Carl Schultz, canceled and reissued under certificates 29 to 33, for 2,475 shares, in the name of Mary Schultz, and certificate 34, for 25 shares, in Carl's name; there is no serious dispute as to the regularity of this transfer and reissue. Certificates 16 to 20, for 2,500 shares, originally issued to Le Claire, were surrendered and reissued under certificate 22 for 100 shares, in his name, and certificate 23 for 2,400 shares in the name of Davis, trustee, both of said certificates and the shares represented by them being then pledged to Davis, trustee, as security for the payment of a loan to Le Claire; this seems also to constitute neutral territory, and not to involve any dispute concerning the regularity of the proceedings or the rights of the parties. The subsequent transfers and transactions, however, seem to be regarded by O'Rourke as tending to establish the averments of his com-

plaint.    Mary Schultz, as owner and holder of certificates 29 to 33, amounting to 2,475 shares, indorsed them to her sister, Matusevitz, and Carl Schultz, as owner of certificate 34, for 25 shares, assigned 23 of them to Matusevitz; it is insisted by the appellant, Mary Schultz, that these two transfers are represented by a reissue to Matusevitz under certificate 40, for 2,500 shares, while the respondent, O'Rourke, contends that certificate 40 represents other stock assigned to her.    As the total number assigned to Matusevitz under certificates 29 to 34 is only 2,498 shares, and as the number represented by certificate 40 is 2,500 shares, we concur in respondent's view, and conclude that certificate 40 represents (whether in whole or in part is of no importance upon this appeal) the original Le Claire stock, which was represented by certificates 16 to 20, and was subsequently issued by certificates 22 and 23, and pledged to Davis, trustee.    It should seem, therefore, that Matusevitz became the assignee of all the original Schultz stock, excepting two shares, although no new certificates were issued to her for them, and became the assignee of all the original Le Claire stock, and received certificate No. 40 for the Le Claire shares.    It may possibly be that certificate 40 represents all of the shares (2,498) assigned to Matusevitz under certificates 29 to 34, and also two shares only out of the original Le Claire stock; in any event, at least two of the Le Claire shares must necessarily have been reissued by certificate 40 for 2,500 shares.

Under these circumstances, O'Rourke claims, in the first place, that Mary Schultz did not own shares of stock at any time during the pendency of the former suit, and therefore could not transfer 2,500 shares to him in fulfillment of her obligations; and, in the second place, that, if she did own 2,500 shares at one time during the pendency of that action, they were levied upon and sold while the action was pending, under execution issued out of a justice's court upon a judgment against Mary and Carl Schultz.    Since there is no conflict in the evidence relating to this subject, it becomes our duty to ascertain whether the inferences that may reasonably be

deduced from the undisputed facts justify the order of the court below.

Matusevitz did not testify in the case at bar, but the records of the corporation show that 4,998 shares of stock, represented by regularly issued certificates, were duly assigned to her by the holders of the stock. The corporation has in no way questioned the regularity of the proceedings by which these issues or transfers were made, nor has any one testified to facts which might suggest a well-founded doubt as to the regularity of the transfers to her, though counsel indulge in vigorously expressed suspicions respecting the purpose for which the transfer of the Schultz stock to Matusevitz was made; and also pronounce certificate 40 to be a forgery, because the person who signed it as secretary was not lawfully elected to that office, thus seemingly overlooking the fact that, if the transfer of the shares to her was valid, no irregularity whatever in the mere issuance of the paper certificate could affect her rights or lessen the extent of her ownership.

After an exhaustive examination of the transcript, we find no evidence tending to create a substantial doubt as to the accuracy of the corporation's records in the particulars mentioned, and from them it appears that at the time when the former suit was commenced, and ever since April, 1893 (possibly since February of the same year), the legal title to the original 2,500 Schultz shares of stock, excepting the two shares retained by Carl Schultz, was and has been in Matusevitz. Without, therefore, considering the regularity or legal sufficiency of the proceedings on the execution against the property of Mary Schultz, we must conclude that they did not affect the 2,498 shares which had been duly assigned to Matusevitz in February or April, 1893, and which from that time stood on the records of the corporation in her name. Neither could they reach, had the attempt been made to do so, the 2,500 shares transferred to her in October, 1893, and ultimately represented by certificate No. 40, and likewise standing in her name on the books of the corporation.

The respondent, O'Rourke, further contends, however, that

Matusevitz did not succeed to the ownership of the Le Claire stock which was pledged to Davis, trustee, and in support of this contention he claims that, while it is conceded that the pledgee's lien was legally enforced, and the pledged stock properly sold by auction to Carl Schultz, he was unable to transfer title to Matusevitz, because the purchase at the pledgee's sale was made with the understanding that O'Rourke was to become entitled to an equal one-third interest in the Le Claire stock then purchased, he to pay his equal proportion of the purchase price thereof. The record shows that this stock was transferred to Matusevitz, and, while counsel differ as to who purchased and who paid for the stock, no attempt has been made to show that Matusevitz had ever heard of the agreement among Lisker, Carl Schultz, and O'Rourke concerning O'Rourke's supposed interest in that purchase; nor was the evidence sufficient to charge Mary Schultz with such knowledge, even conceding that her knowledge of the agreement would be an important item; and hence, in the absence of any proof to the contrary, we are, of course, obliged to conclude that Matusevitz became the legal owner and assignee of these shares, as shown by the books of the corporation. Furthermore, we cannot appreciate the alleged strength of respondent's application for relief to a court of equity, in so far as it rests upon the right to have an undivided one-third interest in the stock, when he does not pretend to have ever paid or contributed any portion of the purchase price to any person.

We conclude, therefore, that on and after October 15, 1893, the outstanding and issued shares of the corporation stock were held as follows, as shown by the records of the corporation: Lisker, 2,500 shares; Thomas O'Rourke, 2,500 shares; Matusevitz, 4,998 shares; and Carl Schultz (or his successor in title under execution sale), 2 shares.

In these circumstances, the present defendant and appellant, Mary Schultz, as plaintiff in *Schultz* v. *O'Rourke*, filed with the referee in that case a certificate numbered 40, for 2,500 shares, issued to Matusevitz, and indorsed by her to O'Rourke,

which certificate so indorsed and assigned was subsequently filed with the clerk of the district court for the benefit of O'Rourke, then the defendant, but now the plaintiff. The respondent contends that this certificate was issued through some questionable proceedings whereby the secretary of the corporation was removed and a new secretary elected, and he therefore claims that the certificate is irregular and void. In making this contention he has overlooked the fact, already adverted to, that the certificate is a mere muniment of title, and that if Matusevitz was the owner of the 2,500 shares mentioned in that certificate, as we think she was, no defect in the certificate would impair her ownership of those shares, or his right thereto as her assignee. Respondent has overlooked also the further fact that, when these shares of stock and the certificates representing them were offered at the former trial, he refused them for reasons other than the supposed defects in the certificate, although the certificate bore upon its face sufficient to notify him of the defects of which he now complains. Having the opportunity and means of knowledge at hand, he should have pointed them out at the time. In the opinion rendered in the former suit this language was used: "Upon the trial there was a formal tender of 2,500 shares, indorsed in blank, it appears, and a demand of the return of $2,500 paid for the stock. * * * No objection was made to the sufficiency of the tender or to its form, except that the stock was attached, as defendant was informed. The defendant cannot now urge any reason for refusing the stock offered on the trial, other than that expressly relied on. He is held to have waived the objections that plaintiff did not have the stock in her own name. * * * The identical shares originally made over to her were not necessarily the only shares which she could return to defendant. As said, one share was as good as another, and represented the same interest in the property." The 2,500 shares offered to O'Rourke by Mary Schultz had not been attached, nor had any attempt been made to reach or to sell them, and, if this record correctly discloses the condition of the corporation's stock,

O'Rourke was and is entitled to have stock certificate 40 canceled, and a new certificate issued to him for 2,500 shares, in strict conformity to the agreement between him and Mary Schultz, and in fulfillment of her obligations to him as declared in the judgment rendered in the former action. If O'Rourke has been deprived by Carl or by Mary Schultz, or by both of them, of the right to share equally in the benefits and bear proportionally the burdens arising from the purchase of the Le Claire stock, he may be able to obtain adequate relief in some appropriate action or proceeding for that purpose, but his proofs in the present case certainly make no such showing as would entitle him to charge with this supposed equity the 2,500 shares owned by Matusevitz, and acquired by her free from such equities, and decline to receive them from Mary Schultz (who is not shown to have had knowledge or notice of the arrangement by which Carl Schultz purchased the Le Claire stock for the benefit of Lisker, himself, and O'Rourke) in discharge of her obligations to him. We have already repeated the language of the opinion in the former case: "The identical shares originally made over to her were not necessarily the only shares which she could return to the defendant. As said, one share was as good as another, and represented the same interest in the property;" and such is the law of the case. In further illustration of this manifest truth, we may say that if Schultz had purchased or otherwise acquired the 2,500 shares owned by Lisker, and offered them to O'Rourke, he could not have refused them; and with equal force it may be said that one share is no worse than another, and that, therefore, the offer of the Matusevitz shares constituted as complete a compliance with the conditions of her contract as the offer of other shares derived from a different source.

Restricted, as we must be, in our inquiry, to the contents of the record before us, we can discover in this case no facts which justified the district court in restraining the execution of the judgment heretofore made by it and affirmed by this Court. The order appealed from is therefore reversed, and the cause remanded.        *Reversed and remanded.*