[S. F. No. 1754.   Department Two.—December 8, 1899.]

GEORGE H. MAURER. Appellant, v. C. K. KING, Respondent.

ESTATES OF DECEASED PERSONS—CLAIM FOR GUARANTEED VALUE OF STOCK—PARTICULARS OF CLAIM.—Under a contract by which one thousand shares of mining stock were delivered by the decedent in part payment for land purchased. at fifty cents per share, guaranteed to be worth that in cash in two years, he agreeing to take the stock from the vendor of the land at that figure if at the end of two years the vendor should hold the stock and so request, a claim presented against his estate a few days after the expiration of the two years, by the vendor of the land for five hundred dollars, with a copy of the contract attached. and an offer to surrender the shares of stock to the administrator in the same condition in which they were received, sufficiently states the particulars of the claim.

ID.—DEMAND UNDER CONTRACT—MATURITY OF CLAIM—PRESENTATION—LIMITATION OF ACTIONS.—Conceding that the claim under the contract for the five hundred dollars was not due until demand made thereunder, it became due upon proper presentation of the claim to the administrator, which is in its nature a demand upon the estate; and, upon rejection of the claim, an action may be maintained thereupon within three months thereafter. The provision for an action within two months after the maturity of a claim not yet due is intended to extend and not to limit the three months' period.

ID.—DELAY IN PRESENTING CLAIM—CONSTRUCTION OF CONTRACT—EXTENSION OF CREDIT—REASONABLE TIME FOR OPTION.—The stipulated period of two years allowed under the contract was an extension of credit to the decedent, who could not, during that period, be compelled to pay the five hundred dollars in lieu of the stock; and the vendor of the land was allowed a reasonable time at the expiration of that period to exercise his option to demand the money for the stock. A delay of four days after expiration of the two years in presenting the money demand to the administrator of the decedent was not unreasonable.

ID.—CONSTITUTIONAL LAW—WAGERING CONTRACTS FOR STOCK—CONDITIONAL PAYMENT IN STOCK WITH GUARANTY.—The restriction of the constitution intended to prevent wagering contracts for the sale of stocks on margin, or to be delivered at a future day, will not be extended by construction so as to forbid the delivery of stock as a conditional payment for the purchase of land, with a guaranty of cash value, and an agreement to take it back at the end of two years, upon request, and to make

the payment in cash, in the absence of any proof that the contract was intended to effect a prohibited transaction, by evasion.

APPEAL from a judgment of the Superior Court of Alameda County.   John Ellsworth, Judge.

The facts are stated in the opinion of the court.

Darwin C. De Golia, for Appellant.

William R. Davis, and F. W. Sawyer, for Respondent.

TEMPLE, J.—This is an appeal by plaintiff from the judgment, and the contention is that the findings do not support the judgment.

The court found all the facts substantially as they are set out in the complaint and that all the denials and allegations in the answer are untrue, and rendered judgment for defendant.

On the 8th of February, A. D. 1895, one J. W. Smith, for a valuable consideration, executed and delivered to plaintiff the following instrument in writing:

"At settlement this eighth day of February, 1895, at Oakland, Cal., and at which time I have purchased George H. Maurer's interest in twenty-five acres of fruit trees, house, etc., on south one-half of section 7, township 18 N., R. 5 E., in Butte county, Cal., and in part payment I give said Geo. H. Maurer (1,000) one thousand shares of the capital stock of the Shenandoah Quartz Mining Company (reorganized), at fifty cents per share, and in order to save said Maurer from any loss on said stock I guarantee that it will be worth fifty cents or more per share inside of two years from this date, in cash—and if he holds said stock at the end of two years from this date, and so requests, I will take it from him and pay him for it at fifty cents per share, and I will pay all assessments on said stock that may be levied on it up to April 1, '95, gratis—as witness my hand the day and date above written.

                                        "J. W. SMITH."

Smith died intestate November 15, 1895, and defendant is his administrator.   At the end of the stipulated period of two years plaintiff still had and owned the shares of stock mentioned in the agreement, and on the twelfth day of February, 1897,

requested the administrator to take said stock, which was then tendered to him, and pay plaintiff fifty cents per share, which was the first demand made by plaintiff upon the administrator.

On the same day plaintiff presented to the administrator for allowance his claim for the said sum of five hundred dollars, which claim was verified on the eighth day of February, A. D. 1897, as a claim for money due.

A copy of the contract was attached to the claim, and the same included an offer to surrender the certificates of stock, duly indorsed in blank by Smith, in the same condition in which plaintiff received them from the deceased. The claim was rejected by the administrator on the said twelfth day of February, A. D. 1897. This suit was commenced more than two months after that time.

Upon this the first point logically in order arises. Respondent, to sustain the judgment, contends that the money was not due until after demand was made, and being a claim for money not due (1) was not presented as required by section 1494 of the Code of Civil Procedure, because the particulars of the claim are not stated. I think the particulars are stated. (2) That being in fact a claim not due, suit should have been brought within two months after its rejection under section 1498 of the Code of Civil Procedure. That section declares that suit must be brought "within three months after the date of its rejection, if it be then due, or within two months after it becomes due." It is argued that this claim became due, if at all, upon demand by presentation, and suit should have been brought within two months.

There are two quite conclusive answers to this contention: 1. If a claim is one which would become due upon presentation, it is a claim then due within the meaning of this statute; and 2. The provision that when the claim is not then due suit shall be brought within two months after it becomes due was manifestly not intended to shorten the time allowed for the commencement of an action, but to extend it. The statute itself makes this obvious.

The next contention is that the amount of fifty cents per share was not due when Maurer verified his claim, because he had not then tendered the stock to the administrator, and had

not made his demand for the money.   It does not strike me that there is any merit in this contention.   Demand could not have been made upon J. W. Smith, for he was dead.   It was useless to tender the stock to the administrator and demand payment, for he could not pay until the claim had been allowed.   The presentation of a claim to an administrator is in many respects analogous to the commencement of an action, but there are some differences, and one difference is important here.   One may not maintain an action on a claim which will become due only on demand, until demand has been made, because it is unjust to subject a defendant to costs until he has neglected or refused to perform his obligation, but the administrator not only cannot perform on demand, but the mere presentation of a claim for an allowance does not subject the estate to payment of costs. And then, in reality the requirement that claims must be presented before suit can be brought is the statutory mode, as well as the statutory requirement for making demand upon an estate.

It is also contended that the claim was presented too late because it was not presented until four days after the stipulated period of two years had elapsed.   Respondent cites section 1490 of the Civil Code, which reads: "Where an obligation fixes a time for its performance, an offer of performance must be made at that time, within reasonable hours, and not before or afterward."   The contract in question imposed no obligation upon plaintiff within the meaning of that section.   Maurer had paid the consideration for the contract, but Smith had not fully performed.   The stipulated two years was not a period within which Maurer was bound to do anything.   It was an extension of credit to Smith.   Within that time Smith could not be compelled to pay the five hundred dollars in lieu of the stock. No doubt Maurer was bound to exercise his option within a reasonable time after the expiration of the credit, and he certainly did do so.   The condition is not, however, "if he requests at the end of two years," but, "if he holds said stock at the end of two years and requests."   As already stated, the period was a credit to Smith and was fixed only for that purpose, and there was no express requirement that Maurer should make his request at the end of the period, but that he could not make it sooner.

It is also contended that the contract is void as a contract

to deliver stock at a future day, under the provisions of section 26, article IV, of the constitution: "All contracts for the sale of shares of the capital stock of any corporation or association on margin, or to be delivered at a future day, shall be void."

This provision of the constitution has been considered in several cases by this court. (*Cashman v. Root*, 89 Cal. 373; 23 Am. St. Rep. 482; *Sheehy v. Shinn*, 103 Cal. 325; *Kullman v. Simmens*, 104 Cal. 595.) These cases establish the proposition that the constitutional policy was to prohibit wagering contracts in regard to the future market value of stocks—"dealing in futures," such transactions have been sententiously called. As explained in *Sheehy v. Shinn, supra,* these contracts take various forms, one of them being margin sales. Others are variously called by brokers "puts," "calls," "options," etc. In all cases the customer (if the deal is with a broker) pays and risks something for the purpose of securing a profit from an expected rise in the market value of stocks. Often no actual purchase is contemplated, but settlements are made according to market rates.

It has been held that this constitutional inhibition cannot be evaded by varying the form of the contract. If it be in reality a wagering contract of the character denounced, it is void. It is not so easy to hold the converse of this proposition, that whenever the transaction was but an ordinary business operation with no intent to gamble in futures, it will be upheld. That would tend to destroy the constitutional policy, and, so far as intent is material, it goes only to the intent to do the act prohibited. The acts plainly prohibited are sales of stock on margin and contracts for the future delivery of shares of stock.

But the provision is highly penal and greatly obstructs legitimate business transactions. A large amount of property is now owned by corporations, and the daily business transactions of the community naturally involve sales or agreements to sell corporate stock. While, therefore, courts must enforce the constitutional policy, contracts which are neither prohibited by the letter of the inhibition nor evasions of it will be upheld. The restriction will not be extended by construction.

In the present case there was no contract for the delivery of stock at a future day. The transaction was not a wager as to fluctuations in the market value of stock. The stock was de-

livered to Maurer as a conditional payment, or as payment with a guaranty. One thousand shares of stock were given in payment of the sum of five hundred dollars, with a guaranty that Maurer would be able to get that sum for it within two years. If he did not realize that sum within two years Smith would take the stock back and pay him five hundred dollars in cash.

Perhaps this form of contract could be used to effect a prohibited transaction. If such were the case, and the intent was made to appear, it would be declared an attempt to evade the prohibition and be unlawful. It is to be regretted that public policy requires this restriction upon business transactions, many of which are perfectly proper and would not really be within the evil which it was intended to remedy. Persons, other than stock dealers, are likely to do the very thing prohibited without knowing that it is wrong and unlawful and without intending to wager as to future values. But whether public interests require this drastic provision, so likely to interfere with legitimate business, and often to serve as an instrument for oppressing the unwary, is not for the courts.

The case is remanded with directions to the trial court to set aside the judgment and to enter judgment for the plaintiff, to be paid in due course of administration.

Henshaw, J., and McFarland, J., concurred.

Hearing in Bank denied.