PORTER ET AL., APPELLANTS, v. PLYMOUTH GOLD MINING CO., RESPONDENT.

(No. 1,747.)

(Submitted December 11, 1903. Decided January 11, 1904.)

*Corporations—Ultra Vires Contracts — Purchase of Stock— Contracts with Shareholder—Validity — Estoppel—Reduction of Capital Stock—Agreements with Subscriber—Contracts—Concurrent Conditions—Offer of Performance—Premature Offers—Appeal—Record—Sufficiency—Bills of Exception — Recitals — Effect — Affirmance of Judgment— Grounds—Attachment.*

1. Where the bill of exceptions recites service of notice of appeal upon counsel for respondent, and shows such counsel's acknowledgment of the same, a contention that service of such notice does not appear from the record is without merit.
2. A contention that the record does not contain the notice of appeal and judgment roll properly certified cannot be sustained where appellant procured a new certificate of the clerk of the lower court, which appears attached to the transcript, and by which the clerk certifies that the record contains "full, true and correct" copies of the judgment roll and notice of appeal, to which no objection was made.

3. Where a corporation contracted to sell stock, agreeing that if, at the expiration of six months from the date of sale, the purchaser should become dissatisfied with the stock or with its earning powers as an investment, he should be entitled to return the same, it could not be heard to say that the sale was valid, and the contract to repurchase was void, without rescinding the sale and returning the purchase money, thus placing the purchaser in *statu quo*.

4. A private corporation may purchase its stock if the transaction is fair and in good faith, if it is free from fraud, actual or constructive, if the corporation' is not insolvent or in process of dissolution, and if the rights of its creditors are in no way affected thereby.

5. The mere repurchase of capital stock by a corporation does not tend to decrease the same unless the directors should absolutely merge or extinguish the stock after its purchase, within the meaning of Civil Code, Section 438, providing that directors of corporations must not reduce or increase the capital stock except as thereinafter specially provided.

6. It is presumed that directors do not violate the law and decrease the capital stock of the corporation on repurchasing the same, and some positive showing must be made to the contrary to overturn that presumption.

7. A contract for the sale of stock by a corporation, whereby the corporation agreed to take back the stock if the purchaser should become dissatisfied therewith, is not objectionable as a secret contract between a corporation and a subscriber, by which the subscriber is at liberty to withdraw his subscription, but is valid and enforceable.

8. Civil Code, Section 1950, defines a conditional obligation as one in which the rights of the parties depend upon the occurrence of an uncertain event. Section 1953 defines concurrent conditions as mutually dependent, and to be performed at the same time. Section 1955 provides that, before a party to an obligation can require another party to perform any act under it, he must fulfill all conditions precedent imposed upon himself, and must be able to offer to fulfill all conditions concurrent imposed upon him on like fulfillment by the other party. *Held,* that a purchaser of corporate stock, who, under his contract of purchase, was entitled to reconvey the same to the corporation, and receive the price paid, could not compel the corporation to repurchase the stock, without himself performing the concurrent condition of redelivery to the corporation.

9. Where the option of resale of corporate stock was to be exercised "at the expiration of six months from this date," the seller was not bound to repurchase until the expiration of the six months, and an offer to deliver the stock before the expiration of that time was premature, and of no avail.

10. An allegation that plaintiffs were "ready and willing" to return certain stock in accordance with a contract providing for its return and a repayment of the consideration given, cannot be construed as an allegation of an "offer" to return the stock.

11. Where a demurrer to a complaint has been sustained for failure to state a cause of action, the judgment entered thereon will be affirmed on appeal if the supreme court concludes that the demurrer should have been sustained upon some other ground, although such ground was not suggested or argued to the supreme court, and although the lower court may have sustained the demurrer for a wrong reason.

12. A recital in a bill of exceptions that the court below, in deciding a demurrer, only passed on the question that the complaint did not state facts sufficient to constitute a cause of action because the contract sued on was *ultra vires,* does not affect the rule that the supreme court will sustain the judgment on the demurrer, if the whole complaint fails to state a cause of action for some other reason than that recited.

13. An attachment cannot be maintained on a complaint which does not state facts sufficient to constitute a cause of action.

*Appeal from District Court, Lewis and Clarke County; J. M. Clements, Judge.*

Action by James Porter and others against the Plymouth Gold Mining Company. From a judgment entered on demurrer, and from an order dissolving an attachment, plaintiffs appeal. Affirmed.

*Mr. S. A. Balliet,* for Appellant.

The contract sued upon is not *ultra vires;* the corporation can mortgage or pledge its stock for the purpose of raising money to conduct its business, and if it may enter into a contract pledging its stock for the purpose of raising money needed for the management of its business, it may also make a conditional sale of said stock for the same purpose, or it may sell it unconditionally for such purpose. (*Chicago, Pekin & Southern R. R. Co.* v. *President and Trustees of Town of Marseilles,* 84 Ill. 145, 643; *Taylor* v. *Miami Exportation Co.,* 6 Ohio, 83; *City Bank of Columbus* v. *Bruce,* 17 N. Y. 507; *Williams* v. *Savage Mfg. Co.,* 3 Md. Ch. 452; *Ex parte Holmes,* 5 Cow. 426; *State* v. *Smith,* 48 Vt. 266, 285, 290; Angell & Ames on Corp. Sec. 280; *Melvin* v. *Lamar Ins. Co.,* 80 Ill. 446; *Beford R. R. Co.* v. *Bower,* 48 Pa. St. 29; Cooke on Stock and Stockholders, Vol. 2, Sec. 681, p. 971; *Leslie* v. *Lorillard et al.,* 110 N. Y. 531, 532; *Logan County Bank* v. *Townsend,* 139 U. S. 67, 71; *Hitchcock* v. *Galveston,* 96 U. S. 341, 351; *State Board of Agriculture* v. *C. S. Railway Co.,* 47 Ind. 407; *Allegheny City* v. *McClurkin,* 14 Pa. St. 81; *Maher* v. *Chicago,* 38 Ill. 266; *Oneida Bank* v. *Ontario Bank,* 21 N. Y. 490; *Argenti* v. *City of San Francisco,* 16 Cal. 256; *Silver Lake Bank* v. *North,* 4 John. (N. Y.) Ch. 370; *Vent* v. *Duluth Coffee & Spice Co.,* 64 Minn. 307; *Brown* v. *St. Paul Plow Works,* 62 Minn. 90; *Thorndike* v. *Locke,* 98 Mass. 340; *Fremont Carriage Mfg. Co.* v. *Thomsen,* 91 N. W. 376; Civil Code of Montana, Sec. 520, Subd. 7.)

The defendant having accepted plaintiffs' money under said contract, and said corporation and its stockholders, having re-

ceived the benefits of plaintiffs' money paid upon said contract, are now estopped from denying the validity of said contract and from availing themselves of the plea that it is *ultra vires.* (Reese on *Ultra Vires,* Sec. 120; Cooke, Stockholders, Secs. 311, 312; *Blalock* v. *Kernsville Mfg. Co.,* 110 N. C. 99; *First Nat'l Bank* v. *Saleme Mills,* 39 Fed. Rep. 89; *Bank, etc.* v. *Bruce,* 17 N. Y. 510; *Taylor* v. *Export Co.,* 6 Ohio, 176; *In re Ins. Co.,* 3 Biss. (U. S.) 452; *Bank Business Transportation Co.,* 18 Vt. 138; *Clapp* v. *Peterson,* 104 Ill. 26; *Dupee* v. *Water Power Co.,* 114 Mass. 37; *Republic Ins. Co.* v. *Swigert,* 135 Ill. 150; *Chicago, etc. R. Co.* v. *Marseilles,* 85 Ill. 145; *Chatlain* v. *Ins. Co.,* 86 Ill. 220; *Fraser* v. *Ritchie,* 8 Ill. App. 554; *Eggeman* v. *Blanke,* 46 Mo. App. 318; *Leland* v. *Hayden,* 102 Mass. 542; *Eby* v. *Guest,* 94 Pa. St. 160; *Early's Appeal,* 89 P. St. 160; *Coleman* v. *Columbus Oil Co.,* 51 Pa. St. 74; *Iowa Lumber Co.* v. *Foster,* 49 Ohio, 25; *State Bank* v. *Fox,* 3 Blatch. (U. S.) 431; *Hartridge* v. *Rockwell R. M. Charlt* (Ga.), 260; *Robinson* v. *Beale,* 26 Ga. 17; *Hagie* v. *People's Ass'n,* 107 N. C. 581; *De Groff* v. *Am. Linen Thread Co.,* 24 Barb. 379; *Steam Nav. Co.* v. *Weed,* 17 Barb. 378; *Silver Lake Bank* v. *North,* 4 Johns. Ch. 370; *Chester Glass Co.* v. *Dewey,* 16 Mass. 102; *McCutcheon* v. *Steamboat Co.,* 13 Pa. St. 13; *Palmer* v. *Lowell,* 3 Sandf. 170; *Manchester, etc. R. Co.* v. *Concord R. Co.,* 9 L. R. A. 693; *Millard* v. *S. F. X. Academy,* 8 Ill. App. 350; *Memphis L. R. R. Co.* v. *Bell,* 19 Fed. 393; *Hitchcock* v. *Galveston,* 96 U. S. 351; *Denver Fire Ins. Co.* v. *McClelland,* 9 Colo. 11; *Camden, etc. R. R. Co.* v. *May's Landing, etc. R. Co.,* 48 N. J. L. 530; *Parrish* v. *Wheeler,* 22 N. Y. 49; *Bissell* v. *Railroad Co.,* 22 N. Y. 258; *Kent* v. *Quicksilver Co.,* 78 N. Y. 159; *Whitney Arms Co.* v. *Barlow,* 63 N. Y. 62; *Woodruff* v. *Erie Ry. Co.,* 93 N. Y. 669; *Bradley* v. *Ballard,* 55 Ill. 413; *Terry* v. *Eagle Rock Co.,* 47 Conn. 141; *Garst* v. *Gale,* 83 Ill. 137; *Ward* v. *Johnson,* 95 Ill. 215; *Peoria R. Co.* v. *Thompson,* 103 Ill. 186.)

The order sustaining defendant's demurrer and dissolving the attachment, and the judgment entered herein, is not author-

ized by the pleadings and is against the law, for the reason that the question as to whether or not the contract sued upon is *ultra vires* cannot be raised upon demurrer.   The plea must be made by answer setting up the facts, showing wherein the contract is beyond the power of the company to enter into; to which plea the plaintiff may then reply, setting up acquiescence, ratification or any matter in estoppel.   (*Manchester, etc. R. Co.* v. *Concord R. Co.,* 9. L. R. A. 693; *Denver Fire Ins. Co.* v. *McClelland,* 9 Colo. 11; *Chicago, etc. R. R. Co.* v. *Town of Marseilles,* 84 Ill. 145; Estee's Pleadings & Forms, Vol. 2, p. 740; Maxwell on Code Pleadings, p. 800; *Camden, etc. R. R. Co.* v. *Railroad Co.,* 48 N. J. L. 563; *Newell* v. *Whitwell,* 16 Mont. 243; *Vent* v. *Duluth C. & S. Co.,* 64 Minn. 307; *Brown* v. *St. Paul Plow Works,* 62 Minn. 90; *Fremont Carriage Co.* v. *Thomsen,* 91 N. W. 378; *Bank* v. *Pence,* 59 Neb. 579.)

*Messrs. Walsh & Newman,* for Respondent.

The contract set forth in the complaint is *ultra vires.*   (Constitution, Art. XV, Sec. 10; Civil Code, Secs. 393, 438; *Bank* v. *Wickersham,* 34 Pac. 444; Thompson on Corporations, Secs. 1511, 1513, 1514, 1516, 1517, 1612; *Jewell* v. *Rock River Paper Co.,* 101 Ill. 57; *White Mt. Ry. Co.* v. *Eastman,* 34 N. H. 124; *Minneapolis T. M. Co.* v. *Davis,* 40 Minn. 110; *Gill* v. *Bates,* 72 Md. 424; *Bedford R. Co.* v. *Bowser Co.,* 48 Pa. St. 29; *Blodgett* v. *Merrill,* 20 Vt. 509; *Melvin* v. *Lamar Ins. Co.,* 80 Ill. 446; *Miller* v. *Hanover, etc. Ry. Co.,* 87 Pa. St. 95; *Sturgis* v. *Stetson,* Fed. Cases, No. 13,568; *Robinson* v. *P. C. Ry. Co.,* 32 Pa. St. 334; *Graff* v. *P. & S. Ry. Co.,* 31 Pa. St. 489; *Harney* v. *V. & A. Ry. Co.,* 17 Ohio, 187; *Chandler* v. *Brown,* 77 Ill. 335; *La Grange* v. *Plank Road Co.,* 29 Mo. 464; *Myer* v. *Blair,* 109 N. Y. 600; *Earnest* v. *Elmira M. I. Co.,* 54 N. Y. St. 116; *Thompson* v. *Reno Savings Bank,* 3 Am. St. Rep. 797; *Upton* v. *Tribilcock,* 93 U. S. 45; *Sawyer* v. *Hoag,* 17 Wal. 620; *Burke* v. *Smith,* 16 Wal. 390; *Rider* v. *Morrison,* 54 Md. 429; *Hughes* v. *Antietam Co.,* 34 Md. 316; *Pacific Fruit Co.* v. *Coon,* 107 Cal. 447; *Chicago Bldg. & Mfg.*

*Co.* v. *Lyon,* 64 Pac. 6; *Topeka Mfg. Co.* v. *Hale,* 17 Pac. 601; *Farnsworth* v. *Robbins,* 31 N. W. 349; Beach on Private Corporations, Sec. 538; Cook on Corporations, Sec. 168; Constitution, Art. VIII, Sec. 28; Code of Civil Procedure, Sec. 460.)

Any person purchasing stock of a corporation is charged with a knowledge of the laws of the state or country under which it is created, the provisions of its charter and its by-laws. His rights must be determined by these laws. (Thompson on Corporations, Secs. 3046, 1137, 1400, 1401, 1393; Morawetz on Corporations, Sec. 101; *Upton* v. *Tribilcock,* 93 U. S. 45; *Morgan* v. *Struthers,* 131 U. S. 31; *Giesen* v. *London & A. M. Co.,* 102 Fed. 584; *Silver Mines* v. *Brown,* 58 Fed. 644; *Railway Co.* v. *Gebhard,* 109 U. S. 527; *Hawkins* v. *Glenn,* 131 U. S. 533; *First Nat'l Bank* v. *Gustin, etc. Min. Co.,* 42 Minn. 327; *Peters* v. *Lincoln,* 14 Fed. 319; *Kelley* v. *Clark,* 21 Mont. 340; *Farnsworth* v. *Robbins,* 31 N. W. 349; *Minneapolis T. M. Co.* v. *Davis,* 10 Minn. 110.)

A corporation cannot purchase its own stock. (*Dartmouth College* v. *Woodward,* 4 Wheat. 636; Civil Code, Secs. 393, 438, 413, 4654; *German Savings Bank* v. *Wulfkluhler,* 19 Kan. 60; *Barton* v. *Port Jackson, etc. R. Co.,* 17 Barb. 397; *Adams* v. *Westlake Co.* (S. Dak.), 65 Pac. 471; Thompson on Corporations, Secs. 548, 1107, 1548, 2054, 3276, 3277, 8351; *Zutullas Claim,* 5 Chancery Appeals, 444; *Coppin* v. *Greenless Co.,* 38 Ohio St. 275; *Morgan* v. *Lewis,* 45 Ohio St. 702; *Price* v. *Pine I. C. Co.,* 32 S. W. 267; *St. Louis Rawhide Co.* v. *Hill,* 72 Mo. App. 142; *St. Louis Mfg. Co.* v. *Hilbert,* 24 Mo. App. 338; *Crandall* v. *Lincoln,* 52 Conn. 73; *Abelles* v. *Cochran,* 22 Kan. 441; *First Nat'l Bank* v. *Ex. N. B.,* 92 U. S. 122; *Bank of S. L. O.* v. *Wickersham,* 34 Pac. 444; *Heggie Bldg. & L. Ass'n,* 12 S. S. 275; *Herring* v. *Ruskin C. A.,* 52 S. W. 327; Beach, Private Corporations, Sec. 242; *Currier* v. *Plate Co.,* 56 N. H. 262; Cooley on Const. Lim. 394; Green's Brice's *Ultra Vires,* 81; Cook on Stockholders, Sec. 309; Morawetz on Corporations, Secs. 112, 434; Political Code, Sec. 5152; Code of Civil Procedure, Sec. 3452.)

The defendant is not estopped from claiming that the alleged contract is *ultra vires.* (*Penn. R. R. Co.* v. *St. L. R. R. Co.,* 118 U. S. 290; *Bank of Augusta* v. *Earle,* 13 Peters, 519; *Pittsburg, C. & St. L. R. Co.* v. *Keokuk & H. B. Co.,* 131 U. S. 371; *Parkersburg* v. *Brown,* 106 U. S. 487; Beach, Private Corp. Sec. 421; *Central T. Co.* v. *Pullman P. C. Co.,* 139 U. S. 24; *Chewalker Lime Works* v. *Dismukes* (Ala.), 6 So. 122; *Jemison* v. *Citizens' Savings Bank,* 25 N. E. 264.)

MR. COMMISSIONER CLAYBERG prepared the opinion for the court.

Appeal from final judgment and from an order dissolving attachment.

The material allegations of the complaint are, briefly, as follows: That on the 23d day of May, 1900, appellants and respondent entered into a contract whereby respondent agreed to sell appellants 4,000 shares of the capital stock of the respondent company at the price of $2,000; that appellants purchased the same, and paid the consideration therefor to respondent; that at the same time this purchase was made the respondent agreed in writing with the appellants that if, at the expiration of six months from the date of the sale, appellants should become dissatisfied with the stock, or with its earning power as an investment, they should be entitled to return the said stock to said respondent upon notifying respondent of their intention so to do, and that the respondent should relieve them of all liability thereon, and repay to them the said $2,000, with interest at 8 per cent. from date of payment; that on or about September 13, 1900, appellants became dissatisfied with the stock and its earning power as an investment, and notified respondent of their conclusions, and of their intention to return the stock to respondent and demand the payment of the sum of $2,000 and interest. The complaint continues: "And at said date the said James Porter and George Swan did demand of said Plymouth Gold Mining Company, of Gould, Montana, the payment of the said $2,000, with interest, as aforesaid, and did

offer to return the stock of said Plymouth Gold Mining Company in accordance with the terms of said agreement. Plaintiffs further state that ever since said date they have been ready and willing to receive payment of said two thousand dollars ($2,000) and interest aforesaid upon the same from the 23d day of May, 1900, and ever since said 13th day of September, 1900, have been ready and willing to deliver said stock to said company in accordance with said agreement."

Respondent demurred on the ground that the complaint did not state facts sufficient to constitute a cause of action. The court below sustained this demurrer. Appellants standing on their complaint, judgment was entered in favor of defendant.

Upon the filing of the complaint and issuance of summons in this case appellants caused an attachment to issue against the property of respondent. Respondent made a motion to dissolve the attachment, which motion was heard at the same time as the hearing of the demurrer. The court dissolved the attachment, and appellants also appeal from said order of dissolution.

On the day of the hearing of these appeals counsel for respondent presented a motion for their dismissal, based on the three following grounds, viz.: (1) Because the record does not disclose that the notice of appeal was served upon respondent. (2) Because the record does not contain the notice of appeal properly certified. (3) Because it does not appear from the certificate of the clerk of the court below that the record contains the judgment roll. On the hearing, permission was given appellants to correct the record so as to avoid the motion to dismiss, if the facts warranted it. Counsel for the appellants procured a new certificate of the clerk of the court below, which now appears attached to the transcript, and by which the clerk certifies that the record contains "full, true and correct" copies of the judgment roll and notice of appeal.

There is no merit in the first ground of the motion. The respondent does not object because there was no service of this notice, but because it does not appear from the record that a notice of appeal was served upon respondent. The bill of excep-

tions, which is properly a part of the record, recites service upon counsel for respondent, and shows their acknowledgment of the same.

The second and third grounds of the motion, viz., that the record does not contain the notice of appeal and judgment roll properly certified, have been removed by the new certificate of the clerk of the court below, to which no objection has been made.

We advise that the motion to dismiss the appeal be overruled.

We shall therefore consider the appeal upon its merits. The first matter for consideration is the appeal from the judgment, and the first question to be decided is, does the complaint state facts sufficient to constitute a cause of action?

1.   Counsel for respondent, in support of the judgment, insists that the contract sued upon is *ultra vires* on three grounds: (a) That a private corporation cannot purchase its own stock; (b) that by such purchase its capital stock is decreased, in violation of Section 438 of the Civil Code; (c) that by such purchase a subscriber is secretly allowed to withdraw his subscription. We shall discuss these reasons *seriatim*.

(a) May a private corporation purchase its own stock? Generally speaking, a corporation, when acting within the scope of the purposes of its organization, has the same power to contract with reference to such purposes as an individual. True, this power must be exercised in the proper corporate manner, and by the proper corporate officers. In this case, however, no question is raised concerning the form or manner of the execution of the contract sued upon. So we must assume that it was made in the proper corporate manner, and by the proper corporate officers. In the absence of a showing to the contrary, we must also assume that the corporation held the stock in question for sale just as it holds any other asset, and possessed the power of disposition. We are therefore not concerned as to the manner in which the corporation acquired the stock, or the character of the stock itself. It is sufficient to know that it had the stock,

the right to sell it, sold it, and received the purchase price upon such sale.

Respondent complains that the corporation did not stop at the sale of the stock and the receipt of the purchase money, but contracted to take the stock back and return the purchase price, with interest, upon the happening of certain events. This agreement by the corporation is based upon the consideration of the purchase of and payment for the stock by appellants, by the express terms of the contract sued upon. Two objects were evidently in the minds of the contracting parties at the time this contract was entered into, which were sought to be accomplished by the contract, viz., the sale of the stock and a contract for its repurchase. The company desired to sell the stock; appellants desired to purchase the same, but were unwilling to do so without having the company bound by contract to repurchase it upon the happening of certain events. The purchase and payment of the purchase price was a consideration to the company for its promise to repurchase the stock. There was but one contract, viz., for the sale and repurchase of the stock, each object being a consideration for the other. This contract was entire and indivisible. The sale could not be sustained unless the contract of repurchase could be enforced. Therefore, if a portion of the contract is *ultra vires*, the whole contract must fall. The corporation cannot be heard to say that the sale was valid and the contract to repurchase was void without rescinding the sale and returning the purchase money, thus placing the other party in *statu quo ante*. The appellants have executed the contract of purchase on their part by the payment of the purchase price. The corporation therefore has received from them something of value, which it would not have received except for its contract of repurchase. It cannot be heard to say: "True, I have received your two thousand dollars, which I promised to return to you upon the happening of certain events, but my promise in that regard was and is beyond my power to enter into, and, although the contemplated events have occurred, I will keep your money, and will not perform my contract."

Such action, if allowed, would be reproach upon the law. It is not honest or right, and right is the basic principle of all law.

The following language of Judge Parker in *Steam Naviga- tion Co.* v. *Weed,* 17 Barb. 378, is very pertinent in this con- nection: "I am happy to come to the conclusion that the law will not sustain this most unconscionable defense. It ill be- comes the defendants to borrow from the plaintiff one thousand dollars for a single day, to relieve their immediate necessities, and then to turn around and say, 'I will not return you this money, because you had no power, by your charter, to lend it.' Let them first restore the money, and then it will be time enough for them to discuss with the sovereign power of the state of Connecticut the extent of the plaintiff's chartered privileges. We shall lose our respect for the law when it so far loses its character for justice as to sanction the defense here attempted."

But this is somewhat of a digression, and is only stated as illustrating the character of the defense sought to be interposed by the corporation. We shall now return to the question under consideration.

We believe the rule to be well settled in the United States by the overwhelming weight of authority and reason that a private corporation may purchase its own stock if the transaction is fair and in good faith; if it is free from fraud, actual or con- structive; if the corporation is not insolvent, or in process of dissolution; and if the rights of its creditors are in no way af- fected thereby. (*Clapp* v. *Peterson,* 104 Ill. 26; *City Bank of Columbus* v. *Bruce,* 17 N. Y. 507; *State ex rel. Page* v. *Smith,* 48 Vt. 266; *Williams* v. *Savage Mfg. Co.,* 3 Md. Ch. 418; *Tay- lor* v. *Miami Exp. Co.,* 6 Ohio, 177; *Crandall* v. *Lincoln,* 52 Conn. 73, 52 Am. Rep. 560; *Chicago, Pekin, etc. R. R. Co.* v. *Marseilles,* 84 Ill. 145; *Dupee* v. *Boston Water Power Co.,* 114 Mass. 37; *St. Louis Rawhide Co.* v. *Hill,* 72 Mo. App. 142; *Morgan* v. *Lewis,* 46 Ohio St. 1, 17 N. E. 558; *Yeaton* v. *Eagle Oil & Refining Co.,* 4 Wash. 183, 29 Pac. 1051; *Chap- man* v. *Ironclad, etc. Co.,* 62 N. J. Law, 497, 41 Atl. 690; *Blalock* v. *Kernersville Mfg. Co.,* 110 N. C. 99, 14 S. E. 501;

*Howe Grain, etc. Co.* v. *Jones,* 21 Tex. Civ. App. 198, 51 S. W. 24; *Chalteaux* v. *Mueller,* 102 Wis. 525, 78 N. W. 1082; *Rollins* v. *Shaver Wagon, etc. Co.,* 80 Iowa, 380, 45 N. W. 1037, 20 Am. St. Rep. 427; *Oliver* v. *Rahway Ice Co.,* 64 N. J. Ch. 596, 54 Atl. 460; *Republic Life Ins. Co.* v. *Swigert,* 135 Ill. 150, 25 N. E. 680, 12 L. R. A. 328; *First Nat'l Bank of Peoria* v. *Peoria Watch Co.,* 191 Ill. 128, 60 N. E. 859; *New England Trust Co.* v. *Abbott,* 162 Mass. 148, 38 N. E. 432, 27 L. R. A. 271; *West* v. *Averill Grocery Co.,* 109 Iowa, 488, 80 N. W. 555; *Dock* v. *Schlichter Jute Co.,* 167 Pa. 370, 31 Atl. 656; *Marvin* v. *Anderson,* 111 Wis. 387, 87 N. W. 226; 1 Cook on Corporations, Sec. 311.)

No bad faith, unfairness or fraud is charged against this transaction. There is nothing tending to show that the corporation is insolvent, or in process of dissolution, or that any cred-. itors exist whose rights could be affected.

(b) Would the capital stock of the company have been reduced in violation of Section 438, Civil Code, by the purchase of this stock?

Section 438, Civil Code, provides as follows: "Directors of corporations must not * * * reduce or increase the capital stock except as hereinafter specially provided." The mere repurchase of this stock would not tend to decrease the capital stock of the company, unless the directors should absolutely merge or extinguish the stock after its repurchase. The company could own and deal with it just the same as it had done before the sale. It could be sold and issued again. The company would be in no different position as to this stock than it would have been had the transaction with appellants in regard to it never occurred. When it is transferred to the company, it becomes a part of its property. It is there for the creditors and stockholders. The *capital stock* is not decreased. A portion of the *capital* of the company may be unavailable until the stock is again sold and issued, but nothing is destroyed. Whether the stock is merged or extinguished or held as an asset for sale is much a matter of intention on the part of the corporation.

If it is unlawful to decrease the capital stock, presumptively the directors did not violate the law. It would require some positive showing to the contrary to overturn this presumption. The following authorities lend sufficient support to this position: 1 Cook on Corp. Sec. 313; *Taylor* v. *Miami Exp. Co.,* 6 Ohio, 177; *City Bank of Columbus* v. *Bruce,* 17 N. Y. 507; *Williams* v. *Savage Mfg. Co.,* 3 Md. Ch. 418; *Ex parte Holmes,* 5 Cow. 426; *State ex rel. Page* v. *Smith,* 48 Vt. 266; *Morgan* v. *Lewis,* 46 Ohio St. 1, 17 N. E. 558; *Bank of San Luis Obispo* v. *Wickersham,* 99 Cal. 655, 34 Pac. 444.

(c) Did such purchase secretly allow a subscriber to withdraw his subscription?

It must be remembered that appellants did not become *subscribers* for any stock of the respondent company, and therefore there could have been nothing due to the company from them as subscribers. By the transaction they became the *bona fide* owners of the stock as full paid, and could never be called on, at least by the company, to pay any further sum on the stock. Therefore the numerous cases relied on by the counsel for the respondent of secret contracts between a corporation and a subscriber for stock, by which the subscriber's liability for further payment on their subscription is released, while excellent law, have absolutely no bearing upon this case. The Supreme Court of Illinois well says with reference to these cases: "So the question is not whether appellant may release the village from paying for and receiving the shares subscribed for, but whether appellant has power to purchase shares of its own stock, paid for, issued to and held by the village." (*Chicago, Pekin, etc. Ry.* v. *Marseilles,* 84 Ill. 643.) In the following cases, among others, contracts similar to the one in question were held not to be *ultra vires,* and were enforced against the corporations: *Browne* v. *St. Paul Plow Works,* 62 Minn. 90, 64 N. W. 66; *Vent* v. *Duluth C. & S. Co.,* 64 Minn. 307, 67 N. W. 70; *Freemont Carriage Co.* v. *Thomsen* (Neb.), 91 N. W. 376; *Chicago P. & S. W. R. R.* v. *Marseilles,* 84 Ill. 145; *Howe Grain, etc. Co.* v. *Jones,* 21 Tex. Civ. App. 198, 51 S. W. 24; *New Eng-*

*land Tr. Co.* v. *Abbott,* 162 Mass. 148, 38 N. E. 432, 27 L. R.
A. 271; *West* v. *Averill Co.,* 109 Iowa, 488, 80 N. W. 555.

We are satisfied from the foregoing authorities that the con-
tract was a valid and enforceable one, and that the court erred
in holding that it was *ultra vires.* Speaking generally, there
is nothing inherently wrong about such contracts, and they have
been frequently enforced as between individuals.' (*Schultz* v.
*O'Rourke,* 18 Mont. 418, 45 Pac. 634; *Maurer* v. *King,* 127
Cal. 114, 59 Pac. 290.)

2. But the complaint is fatally defective in another sub-
stantial regard. Section 1950 of the Civil Code provides: "An
obligation is conditional, when the rights or duties of any party
thereto depend upon the occurrence of an uncertain event."
Section 1953 provides: "Conditions concurrent are those which
are mutually dependent, and are to be performed at the same
time." Section 1955 provides: "Before any party to an obli-
gation can require another party to perform any act under it,
he must fulfill all conditions precedent thereto imposed upon
himself; and must be able and offer to fulfill all conditions con-
current so imposed upon him on the like fulfillment by the
other party, except as provided by the next section." The con-
tract sued upon comes clearly within the provisions of these
sections. The duty of redelivery of the stock to the respondent,
and the payment for the same by the respondent, became con-
current, mutually dependent, and to be performed simulta-
neously. (*Schultz* v. *O'Rourke,* 18 Mont. 418, 45 Pac. 634.)
This being true, appellants, before they can require the per-
formance of the duty devolving upon respondent to repurchase
the stock, "must be able and offer to fulfill all conditions con-
current so imposed upon him on the like fulfillment by the other
party." (Section 1955, Civil Code.) The complaint is wanting
in any sufficient allegation of this character. The latter part
of paragraphs 2 and 3 of the complaint, above quoted, contain
the only allegations which could tend in any way to this end.
The latter part of paragraph 2 alleges an offer made on or about
September 13, 1900, to return the stock "in accordance with the

terms of said agreement." The contract was entered into on May 23, 1900. The option of resale by the appellants was to be exercised "at the expiration of six months from this date." Respondent therefore, under the contract, was not bound to re-purchase the stock until the expiration of six months from May 23, 1900, and an offer to deliver the stock to the corporation before the expiration of that time was premature, and of no avail. (*Schultz* v. *O'Rourke,* 18 Mont. 418, 45 Pac. 634.) The only other allegations in the complaint upon this matter are those found in paragraph 3. They are utterly insufficient. They do not show that the appellants were able or offered to return the stock, but only that "they are ready and willing" to do so. Being *ready and willing* to perform an act cannot be tortured by construction into an allegation of an *offer* to per-form such act. One might be ready and willing to do an act without knowledge thereof on the part of the other party. The other party could only legally acquire such knowledge by an offer of performance, made to him. It is thus apparent that the complaint is deficient for want of proper allegations in this regard.

This specific defect in the complaint was not raised or argued in this court. Counsel for respondent insists only that the com-plaint is deficient, because it does not allege that the stock was offered to be returned *properly indorsed,* so as to pass title to the company upon its surrender; and not that there was no offer to deliver the stock. This position must have been taken by counsel under the erroneous assumption that the allegations of offer to return the stock on September 13th were sufficient. We have seen that they did not have that effect. This court has established the rule that, where a demurrer has been filed to a complaint on the ground that it does not state facts suffi-cient to constitute a cause of action, and the court below sus-tains such demurrer, and plaintiff elects to stand on his com-plaint, and judgment is entered against him, upon an appeal from the judgment it will be affirmed if this court, upon an in-spection of the complaint, concludes that the demurrer should

have been sustained upon some other ground, although such ground was not suggested or argued to this court by counsel, and although the court below may have sustained the demurrer for a wrong reason. The court says: "This case is before this court on appeal from the judgment, which judgment was on demurrer sustained to the amended complaint for want of substance; plaintiff abiding its complaint. The court was right in its decision on the demurrer. The judgment is right, and must be sustained. The court may have, in sustaining the demurrer, done so for a wrong reason, but we have nothing to do with its reasons. Our duty is to pass upon the correctness of its action. If the act of the court in sustaining the demurrer was right, the court must be sustained. Hayne on New Trial & App. p. 839. The silence of counsel as to the defects found by this court in the said complaint cannot in such a case as this be regarded as a restriction upon the legal scope of the general objection raised by the demurrer." (*Butte Hardware Co.* v. *Frank,* 25 Mont. 344, 65 Pac. 1.)

Counsel for appellants may say that the bill of exceptions in the record discloses the fact that the court below, in deciding the demurrer, only passed upon the question that the complaint did not state facts sufficient to constitute a cause of action, because the contract sued upon was *ultra vires.* There is nothing, however, in the bill of exceptions, which in any manner discloses that the point last above referred to in this opinion was not argued to or considered by the court. It may have been. The presumption that it was is just as consistent with the recital in the bill of exceptions as that it was not. We cannot, therefore, permit this recital in the bill of exceptions to prevail over the law as laid down by this court in its decisions.

3.   The question as to the action of the court in dissolving the attachment which was issued at the time the suit was commenced becomes immaterial under the conclusions that we have reached upon the appeal from the judgment. If the complaint did not state facts sufficient to constitute a cause of action, no attachment could be maintained.

Upon the decision of this court above cited we advise that the motion to dismiss the appeal be overruled, and that the judgment and order appealed from be affirmed.

PER CURIAM.—For the reasons stated in the foregoing opinion, the motion to dismiss is denied, and the judgment and order affirmed.

MR. JUSTICE HOLLOWAY: I agree with the conclusion reached in paragraph 2 of the opinion. The only question before the court for determination is, does the complaint state a cause of action? That question is answered in the negative in paragraph 2 above, and the judgment of the trial court is affirmed. In my judgment, the decision reached in paragraph 1 of the opinion is simply a dictum, and should not be announced as a determination of this court.

Rehearing denied February 10, 1904.