Argued March 24; reversed April 14; rehearing denied
May 19, 1936

# FIRST SECURITIES CO. *v.* AMERICAN HECOLITE DENTURE CORPORATION

(56 P. (2d) 339)

*Francis E. Marsh,* of McMinnville (Vinton, Marsh & Marsh, of McMinnville, Calvin N. Souther, of Portland, and Elliott Cummins, of McMinnville, on the brief), for appellant.

*V. V. Pendergrass,* of Portland (Pendergrass, Roehr & Zollinger, of Portland, on the brief), for respondent.

BAILEY, J. This is a suit for specific performance brought by the First Securities Company against American Hecolite Denture Corporation, both Oregon corporations, to require the defendant to pay to the plaintiff the sum of $12,905 with interest thereon at the rate of 5 per cent per annum from December 31, 1930, on an agreement by the defendant with The First National Corporation of Portland, a corporation, assignor of plaintiff and hereafter in this opinion to be referred to as the National corporation, to repurchase from the latter 58 shares of the capital stock of First National Bank of Portland at $222.50 per share, making a total obligation of $12,905 with interest as above stated. From a judgment and decree in favor of the plaintiff for the full amount prayed for, the defendant has appealed.

The complaint, after averring the incorporation of both the plaintiff and the defendant, alleged that on December 31, 1930, the defendant was the owner of 58 shares of the capital stock of the bank and at the instance of the defendant the National corporation purchased said stock and paid the defendant therefor the sum of $222.50 per share. Paragraphs IV and V of said complaint are as follows:

"IV

"That at the same time and as a part of the same transaction and for and in consideration of the pur-

chase by said The First National Corporation of Portland of said block of stock, defendant did agree to repurchase the same and to pay therefor to the said The First National Corporation of Portland the sum of two hundred twenty-two and 50-100 ($222.50) dollars per share, or the total sum of twelve thousand nine hundred five 00-100 ($12,905.00) dollars, together with interest thereon at the rate of five per cent per annum from the date of the purchase thereof by The First National Corporation of Portland to the time of the repurchase thereof and the payment by defendant of the purchase price therefor, all of which defendant did agree to do and perform on or before thirty. (30) days from the 31st day of December, 1930, a copy of which agreement is hereto attached, marked Exhibit 'A' and hereby by reference made a part and portion hereof.

"V

"That ever since said time, and up to the time of the assignment of said agreement to plaintiff as hereinafter alleged, the said The First National Corporation of Portland was ready, willing and able to deliver to said defendant the block of stock covered by said agreement upon compliance by defendant with the terms thereof, and that during said time and on various occasions the said The First National Corporation of Portland did request performance of said agreement by defendant and did offer to deliver said block of stock to defendant in accordance with the terms thereof."

It is further alleged that on August 24, 1932, the National corporation assigned, transferred and delivered said stock to the plaintiff, subject to the agreement between the National corporation and the defendant, and assigned and transferred to the plaintiff its right, title and interest in said agreement; and that ever since that time the plaintiff has been ready, willing and able to perform the terms of the agreement to be performed by it and to deliver the said stock to

the defendant upon compliance by the latter with the terms and conditions of said agreement. The plaintiff also alleged that it had tendered to the defendant such stock, which tender had been refused by the defendant, and that prior to the commencement of this suit the plaintiff had tendered such stock to the clerk of the court, to be delivered to the defendant upon payment of the purchase price.

The prayer of the complaint is that the defendant be required to purchase from the plaintiff said stock and to pay therefor the price agreed, and that the plaintiff recover from the defendant the price which the defendant agreed to pay for such stock, with interest thereon as above stated. A copy of the agreement is attached as an exhibit to the complaint and is as follows:

"The First National Corporation,
    Portland, Oregon.
Gentlemen:
    "This is to confirm our agreement that, in consideration of the purchase by you this day of fifty-eight shares of the capital stock of The First National Bank of Portland (Oregon), for the sum of two hundred twenty-two and 50-100 ($222.50) dollars per share, the receipt of the purchase price of which we do hereby acknowledge, we do agree to repurchase said stock from you on or before thirty days from the date hereof, and to pay you therefor, in cash, at the time of such purchase, the sum of two hundred twenty-two and 50-100 ($222.50) dollars per share, together with interest thereon at the rate of five per cent per annum, from the present date to the time of such payment.

"Very truly yours,

"American Hecolite Denture
Corporation
By (Signed) B. Underdahl
Dated Dec. 31, 1930."

The defendant, after alleging the execution of the agreement above quoted, further alleged that the National corporation and the plaintiff had failed to tender or offer tender of the stock to the defendant or to demand or request the defendant to repurchase said stock from the National corporation or the plaintiff, during the entire period of 30 days commencing December 31, 1930, and did not demand or request the defendant to repurchase said stock until on or about January 27, 1934. As a further defense it is realleged that plaintiff and its assignor failed to tender' said stock or to demand that the defendant repurchase the same, until January 27, 1934; that during the 30-day period following December 31, 1930, and for several months thereafter the stock had a market value of between $210 and $225 per share and at the time of the tender or offer of said stock in January, 1934, the stock had a market value of only $100 per share; that laches and unreasonable delay on the part of the plaintiff and its assignor, National corporation, to tender said stock and exercise the option to require the defendant to repurchase it, worked to defendant's injury and prejudice; and that it would be inequitable to require the defendant now to repurchase said stock.

The evidence is to the effect that the National corporation was organized under the laws of Delaware and that at the time of the transaction here involved owned an appreciable amount of the capital stock of the bank, was purchasing more stock therein "when other people were offering it", and was willing to purchase the 58 shares above mentioned at $220 to $225 a share; that the plaintiff was a subsidiary of the bank; and that the transaction forming the basis of this litigation was carried on for defendant by Mr.

B. Underdahl, secretary, and for the National corporation by Mr. E. B. MacNaughton, president of the plaintiff company, an officer of the bank and a director of the National corporation, and by Mr. J. H. Mackie, an officer of all three corporations. According to Mr. MacNaughton's testimony the 58 shares of stock were purchased by the National corporation "in reliance upon" the written agreement hereinbefore quoted. He testified, in answer to interrogatories by counsel for plaintiff, as follows:

"Q. Does this instrument evidence the entire agreement or understanding between the parties at the time? A. I think so. The conversation entered into before the agreement was drawn was he wanted us to take this stock off his hands, and at the end of thirty days—at the end of thirty days he would take it up. And that agreement was made on that basis."

The written agreement was delivered by Mr. MacNaughton to Mr. Mackie, and the latter testified concerning that incident as follows: "Mr. MacNaughton brought this letter, or agreement, to me and informed me that the corporation was buying the stock of the American Hecolite Denture Corporation under the terms of that agreement, and asked me to give them a check for it, which I did." Both Mr. MacNaughton and Mr. Mackie stated that they did not know where the instrument was written, but Mr. Underdahl stated positively that it was drawn up at the bank, where negotiations for the sale of the stock were had.

The evidence is undisputed that no request was made by the National corporation of the defendant to repurchase this stock until several days after the expiration of the 30 days stipulated in the agreement. The only evidence in this respect on behalf of the plain-

tiff was that of Mr. Mackie, who was not certain as to the exact date when he did so, but testified that he called Mr. Underdahl by telephone a few days after January 30, 1931, concerning the matter. On the other hand, Mr. Underdahl said that it was not until about June, 1931, that any mention of the stock was made to him. He was absent from Portland from about the middle of February until the latter part of May of that year, and was positive that no mention was made of the matter until after his return.

Over the objection of the defendant that it was an attempt to vary by parol evidence the terms of a written instrument and that the facts sought to be shown were not within the issues made by the pleadings, evidence was admitted that long after January 30, 1931, when the defendant was requested to repurchase the stock, it did not expressly repudiate its agreement, but on the contrary requested the National corporation to grant further time, because of defendant's financial condition, to take up the stock. This evidence was controverted by the defendant. There was also admitted in evidence, however, over the same objection by the defendant, correspondence between the National corporation and the defendant had in January, 1932, tending to substantiate to a limited extent plaintiff's contention that both parties considered the stock as the property of the defendant.

The appellant assails the decree of the circuit court on the ground that the contract forming the basis of the suit and hereinbefore quoted verbatim was only an option granted to the National corporation by defendant, whereby the defendant agreed to repurchase from the National corporation within 30 days of the date of

the contract, at the option of said corporation, the 58 shares of capital stock of the above mentioned bank at the price at which said shares of stock had been sold by the defendant to the National corporation, with interest from the date of the former sale, and that the National corporation had not exercised said option within the time therein provided.

The transaction between plaintiff's assignor and the defendant, as the plaintiff understood it at the time of instituting this suit, is succinctly and clearly set forth in its complaint. According to the allegations in this initial pleading, the National corporation purchased from the defendant 58 shares of the capital stock of the bank, then owned by the defendant, and in consideration of the National corporation's purchase of this stock the defendant agreed that on or before 30 days from the date of such purchase it would repurchase the stock for the amount paid by the National corporation, with interest. In referring to this agreement the plaintiff pleads its legal effect and refers to and attaches a copy of the instrument to the complaint. Nowhere is it alleged that this instrument does not contain all the terms of the agreement between the National corporation and the defendant. Nor is it alleged that it was later modified or that compliance with any of its provisions was waived by either the defendant or the National corporation.

The agreement on which this suit is based is nothing more than a unilateral contract: *Friendly v. Elwert,* 57 Or. 599 (105 P. 404, 111 P. 690, 112 P. 1085, Ann. Cas. 1913A, 357); *Lemler v. Bord,* 80 Or. 224 (156 P. 427, 1034); *Strong v. Moore,* 105 Or. 12 (207 P. 179, 23 A. L. R. 1217), Id., 118 Or. 649 (245 P. 505). The defendant

was bound to repurchase from the National corporation the 58 shares of stock previously bought from defendant by the National corporation, in the event that the latter should elect to require defendant to do so within 30 days of the date of the contract: *Scott v. Goodin,* 21 Cal. App. 178 (131 P. 76) ; *Curtis v. Sexton,* 142 Mo. App. 179 (125 S. W. 806) ; *Engen v. Sheridan County State Bank,* 163 Minn. 1 (203 N. W. 434) ; *Boynton v. Woodbury,* 101 Mass. 346. The National corporation was not in any way obligated to resell the stock to the defendant during the 30-day period, or at any other time, nor was the defendant bound to repurchase it, unless the National corporation within the 30 days availed itself of its option to require the defendant to take up the stock.

This instrument, considered in connection with the allegations of the complaint, can not be construed as a bilateral contract binding the defendant to repurchase the stock and the National corporation to resell the same. The National corporation could, the next day after the contract was signed, have sold the stock to a stranger, without subjecting itself to any liability to the defendant. The agreement was nothing more than an option given by the defendant to the National corporation to require the defendant within 30 days to take back the stock and return to the National corporation the price paid for it, with interest. See, in this connection, *Reitz v. Brouhard,* 198 Iowa 37 (199 N. W. 420), and authorities last above cited. The agreement could have been converted into a valid contract of sale, binding upon both parties, by an unqualified acceptance by the National corporation within the 30-day period: *Friendly v. Elwert,* supra. There was, however, no acceptance of the offer within the time limited by the instrument. Hence, there was no longer

any obligation on the part of the defendant to repurchase the stock.

■ It is contended by the plaintiff that if this agreement be considered merely as an option, the National corporation had a reasonable time after the expiration of 30 days, in which to accept the defendant's offer to repurchase. In support of this assertion the plaintiff cites and relies upon *Reitz v. Brouhard,* supra; *Fitch v. Flinn,* 198 Iowa 823 (200 N. W. 402); *Lane v. Nunn,* 211 Mo. App. 280 (243 S. W. 427); *Maurer v. King,* 127 Cal. 114 (59 P. 290); and *Pellow v. Bollinger,* 109 Cal. App. 740 (293 P. 827). In none of these cases did the contract provide for exercise of the option "on or before" a given date, and no authority has been called to our attention involving an act required to be performed on or before a certain date, wherein the court has held that the optionee had a reasonable time thereafter in which to exercise his option.

■■ The plaintiff, in order to uphold the decree, argues that the real agreement between the defendant and the National corporation involved an extension of credit by the latter corporation to the defendant, and that in reality the stock was pledged to the National corporation as security for a loan of $12,905 to the defendant. Such a contention, however, is inconsistent with the allegations of the complaint and not within the issues framed by the litigants. Pleadings are required by the statute, in order to inform the adverse party of the nature of the claim against him and the theory of the party employing them.

The decree appealed from is reversed and the cause remanded with instructions to dismiss the suit.

CAMPBELL, C. J., and BEAN and RAND, JJ., concur.